**Ivy L. WHITT, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES OF the UNITED STATES OF AMERICA, Defendant.**

**No. 86–1165.**

United States District Court,
C.D. Illinois,
Peoria Division.

Feb. 5, 1988.

Ivy L. Whitt, pro se.

Bradley Murphy, Asst. U.S. Atty., Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

Presently before this Court is Plaintiff, Ivy L. Whitt's (hereafter Whitt), appeal from an unfavorable Social Security benefits decision. Whitt is male, 46 years old, and has a 12th grade education. He is able to read and write. Whitt's past employment history includes one job, a billet yardman.

Whitt filed applications for disability insurance benefits and Supplemental Security Income on April 19, 1984. Administrative Law Judge Lincoln (hereafter ALJ) denied this application on September 17, 1984, on the basis that Whitt's condition did not constitute a severe impairment (Step 2).

This unfavorable decision was appealed and on April 17, 1986, and the Appeals Council also denied Whitt's application. However, the Appeals Council denied Whitt's application on slightly different grounds than the ALJ. Although the Appeals Council also found that Whitt's condition did not constitute a severe impairment, it proceeded in the analysis and concluded that denial of Whitt's application was more appropriately denied on the grounds that his present impairment did not prevent him from performing his past relevant work (Step 4).

On appeal, Whitt asserts three objections: (1) the certified transcript in this case is incorrect, and has been tampered with by the Government; (2) the Secretary of Health and Human Services has refused to make available to Whitt a copy of the oral hearing tape recording; (3) this Court should permit Whitt to submit additional medical records for the period of September 1984 through January 31, 1986.

Whitt appears before this Court as a pro se litigant, and has not filed a Motion for Summary Judgment. His brief does not request that this Court reverse the ALJ and Appeals Council's decisions. However, the Government has filed a Motion to Affirm in response to what has been titled "Plaintiff's Brief." Thus, the fourth issue before this Court is whether the Secretary of Health and Human Services' decision, denying Whitt benefits under the Social Security Act, is supported by substantial evidence in the record.

■ Whitt's first contention that the transcript in this case is inaccurate and has been tampered with by the Government appears to be both inappropriate and unfounded. Whitt asserts that he disagrees with the written version of the transcript and that it has been tampered with.

As the Government points out, the transcript submitted is a certified transcript, certified to by the transcriber as a true and complete transcription of the oral hearing held in this case. 42 U.S.C. § 405(g) provides: "As part of his answer, the Secretary shall file a certified copy of the transcript of record ..." The statute requires no more of the Government. Further, Federal Rule of Evidence 901(b)(4) also asserts that a certified copy of a document is sufficient for admission into evidence. Therefore, this document is properly before this Court. Absent express and specific allegations by Whitt as to portions of the transcript that have been altered or tampered with by the Government, it is the Court's opinion that this claim cannot be sustained.

Whitt's second contention that the Secretary has refused to provide him with a copy of the tape recording of the oral hearing appears to have been resolved since the filing of Whitt's pleading. In its response, the Government asserts that Whitt's request for a copy of the tape was first made known to it in Whitt's pleading filed with this Court, entitled "Plaintiff's Brief." As such, the Government denies any "refusal" on the part of the Secretary to provide the tape. Further, the Government states in its responsive pleading that, now made aware of such request, the Government would be immediately providing Whitt with a copy of the tape requested. Therefore, this issue need not be resolved by the Court.

■ Thirdly, Whitt contends that he should be permitted to submit "vital medical data" for the period of September 1984 through January 31, 1986. The Government contends that a proffer of additional evidence at this time would be improper. The Government points to the fact that Whitt was permitted the opportunity during the Appeals Council's review of this case to submit additional evidence and argument (Tr. 136). However, he chose not to submit further documents (Tr. 139). As such, the transcript that is presently before this Court is a complete transcript that was considered by both the ALJ and the Appeals Council.

Absent some unusual or persuasive circumstances, it is the Court's opinion that it would be improper for additional evidence to be admitted at this time. It would appear that Whitt's failure to submit these additional medical records was not the result of an inability to obtain them from third parties or an improper evidentiary ruling by the Appeals Council, as are sometimes circumstances under which this Court permits the submission of additional evidence. In light of Whitt's right to make new application for benefits in the event new evidence has developed since the time of his initial filing and the review of his case by both the ALJ and the Appeals Council, the Court finds that it must deny Whitt's request to proffer additional evidence at this juncture.

The remaining issue before this Court is whether the ALJ and Appeals Council's decision in this case is supported by sub-

stantial evidence. Specifically, the Court must determine whether Whitt has met his burden of proving an inability to perform his past relevant work.

In order to be entitled to disability benefits under SSI, a plaintiff must show that his or her inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See, 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Social Security Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano,* 614 F.2d 142, 143 (7th Cir.1980). That factual determination is made by using a five step test. See, 20 C.F.R. §§ 404.1520, 416.920.

The five step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently employed?; (2) is the plaintiff's impairment "severe?" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation?; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker,* 732 F.2d 605 (7th Cir.1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4.

However, once the plaintiff shows an inability to perform past work, the burden shifts to the Secretary to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler,* 779 F.2d 1250 (7th Cir.1985); *Havorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984).

The rules in the grid, set out in Appendix 2 of Subpart P of 20 C.F.R. § 404, are considered in determining whether a plaintiff with exertional impairments is or is not disabled. The regulations provide that if an individual suffers from a nonexertional impairment, as well as an exertional impairment, both are considered in determining residual functional capacity. 20 C.F.R. §§ 404.1545, 416.945. If a finding of disability cannot be made based upon exertional limitations alone, the rules established in Appendix 2 are used as a framework in evaluating disability. In cases where the individual has solely a nonexertional impairment, such as pain or mental impairment, a determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in Appendix 2.

The Court's function on review is not to try the case, de novo, or to supplant the ALJ's finding with the Court's own assessment of the evidence. The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971). Credibility determinations made by the ALJ will not be disturbed, unless the finding is clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Evidence is deemed substantial if it consists of such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 9 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence requires more than a scintilla of evidence, but in determining the existence of substantial evidence, a district court is prohibited from substituting its judgment for that of the Secretary's. *Davis v. Schweiker,* 641 F.2d 283, 284 (5th Cir.1981).

■ In determining the sufficiency of the evidence, the Court should consider (1) the clinical findings of treating and examining physicians; (2) the examining physician's diagnosis; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and previous work. *Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982).

At the administrative level, the ALJ made six findings. He found that the claimant met the disability insured status requirements of the Act on August 31, 1981, and continued to meet them through the date of the decision. Further, the ALJ found that the claimant had not engaged in substantial gainful activity since August of 1981. The ALJ concluded that Whitt suffered from essential hypertension, however, his "self-serving testimony with respect to the extent and severity of his subjective complaints was not persuasive." (Tr. 15). The ALJ concluded that Whitt did not suffer from an impairment(s) which significantly limited his ability to perform basic work related activities, and therefore, did not have a severe impairment as defined by 20 C.F.R. §§ 404.1521 and 416.921. Whitt was found to be not disabled as defined by the Social Security Act, at any time through the date of the decision.

The ALJ's conclusion in this case was clearly founded upon Social Security Ruling 82–55 which describes certain impairments which have been held by the Commissioner of Social Security to be "not severe" within the definition of the Regulations. (Tr. 15). Among these conditions is essential hypertension without significant end organ damage. For this reason, the ALJ concluded that Whitt was not disabled.

Since the time of the ALJ's decision, Rev. Ruling 82–55 has been ruled to be obsolete. This ruling was also set forth by the Fourth Circuit in the case of *Hyatt v. Heckler,* 807 F.2d 376 (4th Cir.1986). Therefore, this Court's review must be limited to the Appeals Council's decision, which employed a different analysis than the ALJ's and did not rely on Rev. Ruling 82–55.

■ The decision of the ALJ was appealed to the Appeals Council. The analysis employed by the Appeals Council differed from that employed by the ALJ, although the conclusion was identical. The Appeals Council also concluded that Whitt met the special earnings requirement of the Act on August 31, 1981 and continued to do so through December 31, 1987. Further, the Appeals Council found that Whitt had not engaged in substantial gainful activity since August 31, 1981. The Appeals Council found that the medical evidence established that Whitt suffers from essential hypertension, but that this impairment or combination of impairments is not listed in or medically equivalent of one listed in Appendix 1, Subpart P, Regulation No. 4.

Similar to the finding of the ALJ, the Appeals Council concluded that Whitt's subjective complaints were inconsistent with those that could reasonably be expected based upon the objective medical signs and findings and other evidence of the record. (Tr. 8). Further, the Appeals Council concluded that Whitt's objective testimony was not persuasive.

The Appeals Council found that Whitt had the residual functional capacity to perform work related functions, except for work involving presence around hazardous moving machinery and unprotected heights. Whitt's past relevant work as a billet yardman did not require the above limitation(s), and therefore, his impairments did not preclude him from returning to his past relevant work. The Appeals Council concluded that Whitt was not "disabled" under the Act.

The medical evidence in the record reviewed by the Appeals Council and this

Court is very limited. The report of Dr. Patel of Methodist Medical Center, Peoria, Illinois, dated November 24, 1981, states that Whitt was admitted into the hospital with the diagnosis of accelerated hypertension. Whitt had been sent to the hospital from his place of employment for elevated blood pressure in the range of 200/120, 232/114. At the time of admittance, he complained of dizziness and spots in his visual field, and had also blacked out on several occasions. The blackouts, however, were associated with the intake of alcohol. Whitt was admitted for evaluation and treatment.

All routine studies performed on Whitt revealed results within normal limits. Whitt was placed on Inderal and Apresaside. Whitt's blood pressure responded fairly "adequately" and he was discharged without a diagnosis of accelerated hypertension. (Exhibit 10).

A medical report dated April 26, 1984, from the Veterans Administration outpatient clinic, pertaining to the period of June 1, 1982 to January 6, 1984, revealed a long history of hypertension. Chest x-rays and laboratory testing were within normal limits. A renal arteriograph showed normal renal arteries, although it was determined that the right kidney was smaller than the left. Whitt's hypertension was very well controlled while hospitalized. (Exhibits 12 and 13).

On May 11, 1984, Whitt underwent a consultative examination by Dr. Stanley Rabinowitz, a specialist in internal medicine. Dr. Rabinowitz's report notes that Whitt suffers from a long history of hypertension, with no evidence of end organ damage. He also noted that in spite of multiple anti-hypertensive therapy, Whitt continues to have poorly controlled blood pressure readings in the range of 120/130. Evidence of grade 2 hypertensive retinopathy was present and a resting electrocardiogram showed non-specific ST–T wave changes. (Exhibit 14).

At the hearing, Whitt testified before the ALJ. He described his past relevant work experience as a billet yardman to include recording and keeping inventory of certain grains of steel. Whitt asserted that his job required him to walk approximately five hours per day, stand one to two hours, sit one to two hours, bend and reach frequently and lift 50 to 100 pounds. Further, he testified that "sometimes he wakes in cold sweats, tires easily and gets blurred vision," and his doctors have advised him to watch his salt intake and smoking, do alot of walking for his heart, no lifting and avoid exhaustion. Whitt asserted that he walks or runs about two to four miles a day and is able to cut the grass and shop once in awhile.

The Appeals Council concluded that the objective and subjective evidence in the record established that Whitt retained the residual functional capacity to perform a full range of medium to heavy work activity, which does not require his presence around hazardous moving machinery or unprotected heights. (Tr. 7). Further, the Appeals Council concluded that these identified limitations were not required by Whitt's job as a billet yardman, and therefore, he was not prevented from performing his past relevant work. (Tr. 7).

Heavy work and medium work are defined by the Act at 20 C.F.R. § 404.1567(c) and (d). Medium work is defined as including:

"... lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

Heavy work is defined as including:

"... lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."

It is well established that the burden of proving an inability to perform past relevant work lies with the plaintiff. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir.1980). Therefore, it is the responsibility of Whitt to establish that for medical reasons he is unable to return to his past relevant employment as a billet yardman.

Through Whitt's own testimony, Whitt establishes that he has performed and is capable of continuing to perform the activities of bending and reaching frequently, and lifting up to 50 to 100 pounds. Further, there is no objective medical evidence in the record which establishes that due to Whitt's hypertensive condition, he is precluded from so performing these lifting, bending and reaching tasks. In the absence of such evidence, this Court finds itself compelled to conclude that Whitt retains the residual functional capacity to perform a full range of medium to heavy work activity, restricted only by his presence around hazardous moving machinery or unprotected heights.

Again, by his own testimony, Whitt defines his job as a billet yardman to include the recording and keeping of inventory of certain grains of steel, which require him to walk approximately five hours per day, stand one to two hours, sit one to two hours, bend and reach frequently, and lift 50 to 100 pounds. Nothing in this description indicates that Whitt's job as a billet yardman requires his presence around hazardous moving machinery or unprotected heights. In the absence of such evidence, this Court finds that Whitt has not met his burden of establishing that he is unable to return to and perform his past relevant work as billet yardman. Therefore, the Court finds that in the sequential analysis applicable to this type of case, substantial evidence supports the Appeals Council's finding that Whitt is not disabled. Thus, the Appeals Council's decision must be affirmed and benefits DENIED.