T. Brooks Brademas *v.* J. Frank Hartwig, John Schindler, Jr., Sedgwick House, A Limited Partnership, 100 Center Company, A Limited Parnership, Mishawaka Federal Savings and Loan Association

[No. 3-475A56. Filed November 30, 1977.]

*F. Richard Kramer*, of South Bend, for appellant.

*Edward V. Minczeski*, of South Bend, for appellees.

STATON, P.J.—T. Brooks Brademas filed a complaint in three paragraphs. Two of those paragraphs are relevant to this appeal. Paragraph I sought injunctive relief and damages resulting from an alleged continuing trespass. Paragraph II sought a declaratory judgment concerning the rights and duties of the parties herein

under a deed given pursuant to a contract for the sale of certain real estate. The trial court held, inter alia, that it was without jurisdiction to decide the issues formed by Paragraph I and that Sedgwick House had obtained an easement under the deed. The trial court also granted injunctive relief in favor of Sedgwick House with respect to its rights in the easement. In his appeal to this Court, Brademas claims that the trial court erred in all three determinations. We reverse and remand to the trial court with respect to the issues formed by Paragraph I of the Complaint, we affirm with respect to the issues formed by Paragraph II, and we dissolve the injunction.

## I.

### Jurisdiction

100 Center Company ("Center Company") was the owner of certain real estate. In 1970, Center Company conveyed a portion of that property to Sedgwick House. Sedgwick House is a limited partnership, of which Center Company is a general partner. In 1972, Center Company conveyed the remaining parcel of land to Brademas. Shortly thereafter, Brademas initiated this action. Paragraph I of Brademas' complaint alleged a continuing trespass arising out of the collection and discharge of waters from property owned by the defendants onto the property purchased by Brademas. The complaint sought a temporary injunction, a permanent injunction, and damages.

Center Company and Sedgwick House had previously filed an action in the same court, under Cause No. F-3297, which embraced similar matters. On October 12, 1972, the trial court held a hearing on the matter of the temporary injunction, consolidating, for that purpose only, Paragraph I of the instant case and two paragraphs of F-3297. That hearing resulted in an adjudication for Center Company and Sedgwick House and an adjudication against Brademas on the matter of the temporary injunction. Later, a special judge was appointed by the Supreme Court to preside over F-3297.

On May 6, 1974, the issues presented on the complaint filed by Brademas were tried. The trial judge ruled that he was without

jurisdiction to decide the issues raised by Paragraph I. In an opinion, which was rendered with the judgment, the judge gave the following rationale for his decision:

> "Pleadings Paragraph I sought an injunction relative to an alleged trespass upon the real estate. The issues therein were disposed of in a consolidated hearing on said Paragraph with a Paragraph of Compliant Filed by the Defendant under another cause number seeking diametrically opposite relief. A Temporary Injunction was granted to the Defendants in the other action, and temporary injunctive relief was denied to the Plaintiff under his Pleading Paragraph I. Subsequent thereto, the Supreme Court has appointed a special judge in the other cause, and the parties have not proceeded further under this Paragraph in this Cause, the presiding judge being presumably without jurisdiction."

Ind. Rules of Procedure, Trial Rule 42(A) provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; . . ." As indicated above, in addition to temporary injunctive relief, Paragraph I sought permanent injunctive relief and damages. The issues presented by a request for a temporary injunction are not the same as those presented by requests for a permanent injunction or damages. *City of Fort Wayne v. State ex rel. Hoagland* (1976), 168 Ind. App. 262, 342 N.E.2d 865. The consolidated hearing dealt only with the temporary injunction. Thus, the trial court was incorrect in its conclusion that "the issues therein were disposed of in a consolidated hearing . . ." Additionally, since the record shows that Bradems did present evidence on the alleged trespass at the May 6 hearing, we do not agree that the parties "had not proceeded further under this Paragraph in this Cause." The appointment of the special judge in F-3297, by itself, could have no jurisdictional effect on the proceedings under Brademas' complaint.

We can find nothing in the record to indicate that the court was ever divested of jurisdiction of the matters raised by Paragraph I. Accordingly, we must reverse and remand to the trial court on this issue.

## II.

### Easement

The deed executed by Center Company to Brademas contains the following provision:

"Reserving to the Grantor, its successors and assigns the following easements:

1. . . .

2. An easement for roadway, parking purposes and for the drainage of surface waters and waters discharged from the roof and floor drains of 'Sedgwick House' over, along and across the following described real estate:"

[Thereafter follows the description of Easement "Z"].

The trial court concluded that the deed created an easement in favor of Sedgwick House.[1] Brademas contends that the deed could not create an interest in Sedgwick House because: (1) Sedgwick House was not a party to the transaction; and (2) the deed does not describe the dominant estate.

Indiana has adopted the rule that a grantor cannot, by reservation, convey a life estate in real property to a party who is a stranger to the deed. *Ogle v. Barker* (1946), 224 Ind. 489, 68 N.E.2d 550. Here, however, we are dealing with an easement and not a life estate. Our courts have not yet considered the application of the rule propounded in *Barker* to easements.

Although the deed is rather poorly drafted, the drafters often failing to distinguish "Grantor" and "Center Company" from "Sedgwick House," the intentions of the parties are patently evident. Denying Sedgwick House an easement would serve only to frustrate those intentions.

The Restatement of the Law of Property has dealt with this problem in the following manner:

"Likewise, it is possible to convey an estate in fee to one

---

1. Although the deed reserves the easement in favor of "the Grantor, its successors and assigns," the trial court determined that the parties intended the easement to be reserved in favor of Sedgwick House.

conveyee and at the same time and by the same instrument of conveyance convey an easement in the same land to another conveyee. This result is not prevented by the fact that the conveyance of the easement is, in terms, a reservation to the person to whom it is conveyed. Thus an easement may be created in C by a deed by A which purports to convey Blackacre to B in fee reserving an easement to C. If, in other respects, the necessary formalities for the creation of an easement are complied with, such a reservation operates as an effective conveyance to the person in whose favor the reservation is, in terms, made.[2]

It is clear that even under *Barker*, a reservation in a deed reserves the specific interest named therein from the operation of the grant and leaves that interest vested in the grantor. The grantor could then convey that interest to whomever he chooses. We can think of no reason why the grantor should be prevented from doing in one step that which he could do in two. We find the logic of the Restatement's position persuasive. Under these particular facts, we prefer to look at the substance of the deed and not merely the form, and we choose to adopt the policy propounded by the Restatement of the Law of Property.

Turning to Brademas' second contention, we note that the deed contains a legal description of certain property which is excepted from the conveyance to Brademas. In addition to the legal description, that property is designated as "Sedgwick House." Thus, the dominant tenement is adequately described.

The trial court properly ruled that the deed created an easement in favor of Sedgwick House.

### III.

### Injunction

The judgment rendered by the trial court reads, in part, as follows:

"IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court:

---

2.   5 RESTATEMENT OF THE LAW OF PROPERTY § 472.

* * *

Judgment for the defendants and against the plaintiff with respect to Pleading Paragraph II, rhetorical paragraph 2, sub-paragraph E of plaintiff's complaint. The defendant Sedgwick House, its tenants, the visitors and guests of tenants and any other persons having legitimate business at the Sedgwick House Apartments have the right to utilize Easement 'Z' for vehicular ingress and egress to the underground parking garage, access to which is on the north side of Sedgwick House, and to use Easement 'Z' for parking. Any efforts by the plaintiff to create a wall or barrier on the southerly property line of Easement 'Z' is an improper and unlawful restraint and interference with the full and complete enjoyment reserved to the above mentioned class of people. *The plaintiff is hereby permanently enjoined from erecting or maintaining any wall or barrier on the southerly line of Easement 'Z' and is restrained from in any manner interfering with the full and complete enjoyment of the said easement by the above mentioned class of people.*" (Our emphasis).

Brademas contends that the trial court erred in granting this injunction because the defendants did not seek such relief. We agree.

The defendants' second amended counterclaim contained four legal paragraphs. At the beginning of the trial, however, the following statement was made by Brademas' attorney:

"The defendants have filed a counter complaint, Your Honor, and we have some stipulations on that. We met the other day and it was agreed that some would be withdrawn and we are left with these two things as I understand it. The two remaining issues of the counter-claim will be one, the specific performance prayer, pleading paragraph two of the defendant's counter claim and the suit for reformation which is pleading paragraph four of the defendant's counter-claim. The prayer is for damages and all the counter-claims have been withdrawn and will simply go on the suit for reformation and specific performance."

The defendants had sought injunctive relief through Paragraph I of their second amended counterclaim. However, the language quoted above clearly indicates that that Paragraph was

withdrawn at the commencement of the trial. A trial court has broad discretion in framing its decrees so that the relief conforms to the circumstances of each particular case. That discretion, however, is limited to relief based on issues raised. *Ferger v. Perine Oil Co.* (1950), 120 Ind. App. 174, 90 N.E.2d 131. There was no issue before the trial court concerning walls or barriers on Easement "Z", therefore, it was error to enjoin Brademas from constructing the same.

We reverse and remand to the trial court for proceedings not inconsistent with this opinion respecting the issues formed by Paragraph I of the Complaint. The injunction discussed above is hereby dissolved. The decision of the trial court is, in all other respects, affirmed.

Garrard, J. and Lowdermilk, J. (By designation), concur.

NOTE—Reported 369 N.E.2d 954.