**Donald FINCH, Appellant–Respondent,**

v.

**Molly FINCH, Appellee–Petitioner.**

**No. 07A04–9110–CV–350.**

Court of Appeals of Indiana,
Fourth District.

June 8, 1992.

Rehearing Denied Aug. 5, 1992.

Thomas M. Barr, Nashville, for appellant-respondent.

David T. Woods, Nashville, for appellee-petitioner.

CONOVER, Judge.

Respondent–Appellant Donald Finch (Donald) appeals the Brown Circuit Court's judgment favoring Petitioner–Appellee Molly Finch (Molly) in a dissolution of marriage action.

We reverse.

The sole issue in this appeal is

whether the trial court abused its discretion in dividing the marital property.

Molly, a forty year old, and Donald, in his fifties, were married in 1988. Donald brought money, real and personal property, and a pension plan to the marriage. Molly, unemployed at the time, brought practically nothing. Later, however, she worked for the county sheriff as a cook for awhile. At the time of the final hearing, she was working part time at a local restaurant and was doing some babysitting which produced around $140 per week income for her.

Donald's health failed in 1989, due to serious kidney problems. Molly quit her job in July, 1990, five months before she filed this action, to care for him. She filed for dissolution of the marriage in January, 1991. Donald's kidney problems required him to retire from his work as a union pipefitter at its onset.

In its dissolution order, the trial court, after observing that the vast majority of the marital assets were brought into the marriage by Donald, declared:

> However, because Wife gave up her employment to care for her Husband and the substantial contributions she made thereby, Husband is not entitled, as he requested, to walk away from the marriage with all he brought into it.

(R. 16–D). So saying, the trial court awarded Molly $10,000 in cash and a 1985 Chevrolet truck for transportation. This award constitutes about 25.2% of the net marital assets.

Donald appeals.

When reviewing the division of property in dissolution of marriage appeals, our standard of review is whether the result reached is clearly against the logic and effect of the facts and circumstances before the trial court, including any reasonable inferences that might be drawn therefrom. We will not reweigh the evidence and we will consider only that evidence and reasonable inferences drawn therefrom which are most favorable to appellee wife. *Swinney v. Swinney* (1981), Ind.App., 419 N.E.2d 996, 997–998, *trans. denied.* We will reverse a trial court when reviewing property disposition in marital dissolution cases only where the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom, *Cunningham v. Cunningham* (1982), Ind.App., 430 N.E.2d 809, 814; and there is no rational basis for its action. *Hasty v. Hasty* (1981), Ind.App., 427 N.E.2d 1119, 1121.

■ Discussing the meaning of the words "just" and "reasonable" as used in IND.CODE 31–1–11.5–11, Judge Shields observed:

The term "just" invokes a concept of fairness and of not doing wrong to either party; however, "just and reasonable" does not necessarily mean equal or relatively equal. (Citing case).

*Swinney,* at 998. In this case, the trial court initially determined the rebuttable presumption given by IC 31–1–11.5–11 that "an equal division of the marital property between the parties is just and reasonable" had been overcome by the facts here. The question next becomes: Given rebuttal of that presumption, was the trial court's division of property here "just and reasonable" within the meaning of the statute? We determine that it was not. The trial court has abused its discretion. We therefore reverse.

All of the facts militate against granting Molly a windfall of $10,000, for the following reasons:

1. The marriage lasted only two and one-half years, and no children were born of it.

2. Donald came into the marriage debt-free and brought $73,073 into it. Molly's assets were negligible, perhaps including an aged Volkswagen.

3. During the marriage, these assets were depleted by $21,083, consisting of expenditures from Donald's savings and checking accounts, his IRA, and the accumulation of nearly $18,000 of debt which must be paid from some source. The only asset which has appreciated in value is the house Donald brought to the marriage, even though Donald still owes Wick's for the deck. The two ponds on the premises were paid for by cashing in Donald's IRA.

4. Donald's financial contributions to the marriage far exceeded Molly's. Not including the diminution of the cash assets he brought to the marriage, Donald also contributed earnings of $27,000 in 1988; $25,000 in 1989; and $10,874 [disability payments during illness] in 1990. Molly contributed only $1,374.37 in 1988, $4,398 in 1989, and $2,735 in 1990.

5. Molly currently is 43 years old, able-bodied, and able to work as a cook and babysitter. Conversely, Donald is now totally disabled, 57 years old, and forced to live on his pension and disability payments. From his reduced income he will be required to pay his day-to-day living expenses, the debts of the marriage, and his continuing medical and prescription expenses.

While Donald concedes Molly did contribute in helping take care of the house and, "to some extent, himself," (Brief of Appellant at 13) he asserts the evidence does not support the Court's conclusion she gave up her employment to take care of him. However, Donald has not challenged the trial court's findings of fact in this appeal and the trial court so found. We are bound by that finding on appeal.

From the trial court's statement referred to above, we believe the trial court awarded Molly $10,000 for leaving her employment and taking care of her husband for the five months before she filed for dissolution of the marriage. In other words, the trial court sought to compensate Molly at the rate of $2,000 per month or $500 per week for assisting her husband during his illness. Her job before she quit, paid her only "eighty-five to ninety dollars per week." (R. 16–B). Compensation for care of an ill spouse is not one of the criteria listed in IC 31–1–11.5–11 for division of property where the presumption for equal division has been overcome. In that context, the $10,000 is a mere windfall for Molly. Such an award is not "just and reasonable" under the facts here, and constitutes an abuse of discretion.

Reversed and remanded for further proceedings consistent with this opinion.

BARTEAU, J., concurs in result with separate opinion.

CHEZEM, J., concurs in result and concurs with the separate concurring in result opinion of BARTEAU, J.

BARTEAU, Judge, concurring in result.

In this case, the trial court entered specific findings of fact and conclusions of law. When a trial court makes specific findings of fact and conclusions of law, we

are bound to review the same under the following standard: we first must determine whether the evidence supports the findings; then determine whether the findings support the judgment. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215, reh. denied. The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *ITT Industrial Credit Company v. R.T.M. Development Company, Inc. et al* (1987), Ind.App., 512 N.E.2d 201, 103. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County, supra.*

I am unable to agree with the reasoning utilized by the majority because I believe it in essence reflects a reweighing of the evidence rather than a determination that either the findings of fact are erroneous or that they do not support the judgment of the trial court.

The trial court found that Donald brought the following assets to the marriage:

Date of Marriage

| | |
|---|---|
| Marital Residence | $43,907 |
| 1980 Chrysler LeBaron (per testimony/no value assigned) | $ 1,200 |
| 1985 Chevy S–10 Truck (per testimony/no value assigned) | $ 4,500 |
| Savings Account | $16,419 |
| Checking Account | $ 4,547 |
| IRA | $ 2,500 |
| Total | $73,073 |

The trial court determined the value of the marital assets at the time of the final hearing to be:

Date of Final Hearing

| | | |
|---|---|---|
| Marital Residence | | $46,000 |
| 1989 Olds Cutlass | | $ 8,600 |
| 1985 Chevy S–10 Truck | | $ 4,000 |
| Savings Account | | $ 5,100 |
| Checking Account | | $ 500 |
| Certificate of Deposit | | $ 5,090 |
| Sub–Total | | $69,290 |
| (minus debts: | | |
| Medical bills | − 8,800 | |
| Cutlass balance | − 8,500) | |
| | − | $17,300 |
| Total Assets | | $51,990 |

Consequently, the net loss in marital assets was $21,083. Donald's uninsured medical expenses accounted for $8,800 of that reduction, leaving a loss of $12,283. Further, the evidence reflected that improvements were made to the real estate, including rerocking the chimney, excavating work on the two ponds on the property ($2,700), work on the front porch ($800), installing a new deck ($1,500), installing sheet rock in the bathroom, dropping the ceiling in the kitchen, putting stucco on the bathroom ceiling, recarpeting the living room, installing congolium in the bathroom and kitchen and installing a new dishwasher. While these many improvements only increased the appraised value of the real estate by $2,093, they reflect necessary maintenance expenditures which will in the long run contribute to the value of the real estate. These substantial expenditures on the marital residence negate any inference that either party may have dissipated marital assets.

The trial court found that "the parties made equal contributions to the assets, Husband through monetary contributions and wife through contribuations [sic] of caring for her husband." The majority opinion states that Donald's financial contributions to the marriage far exceeded Molly's financial contributions. In a strictly mathematical sense, it is true that Donald contributed more financially to the marriage. However, it would be perhaps more appropriate and more reflective of the trial court's determination to state that each party contributed the total of their earnings to the marital pot and that Molly additionally contributed her labor around the house and care for her husband during his illness.

The trial court's findings of fact stated that "because Wife gave up her employment to care for her Husband and the substantial contributions she made thereby, Husband is not entitled, as he requested, to walk away from the marriage with all he brought into it." The majority interprets this statement by the trial court as follows:

[W]e believe the trial court awarded Molly $10,000 for leaving her employment

and taking care of her husband for the five months before she filed for dissolution of the marriage. In other words, the trial court sought to compensate Molly at a rate of $2,000 per month or $500 per week for assisting her husband during his illness. Her job before she quit, paid her only 'eighty-five to ninety dollars per week.' Compensation for care of an ill spouse is not one of the criteria listed in IC 31–1–13.5–11 for division of property where the presumption for equal division has been overcome. In that context, the $10,000 is a mere windfall for Molly. Such an award is not 'just and reasonable' under .the facts here, and constitutes an abuse of discretion.

Contrary to the opinion expressed by the majority, I find nothing in the trial court's findings of fact or conclusions of law which would indicate that it arrived at the $10,000 amount based entirely upon Molly's five months of service caring for Donald.[1]

I further find reference to Molly's "windfall" and the statement that she "brought practically nothing" to the marriage indicative that the majority engaged in a reweighing of the evidence and a reassessment of the credibility and character of witnesses rather than a review of the findings of the trial court.

However, I must concur in result in the majority opinion because I believe the trial court's findings are insufficient to support the judgment. Specifically, the findings provide no guidance concerning how the trial court determined that a Chevy S–10 truck and $10,000, rather than $5 or $5,000, appropriately represented Molly's fair share of the marital assets. Thus, this case should be remanded for reconsideration or for further explanation of the method of calculation employed by the trial court.

---

1. The evidence reflected that Donald encouraged Molly to quit her employment and that she would have quit earlier in Donald's illness, but because he was not yet receiving Social Security disability, they needed the income.