Donald FORBES, Appellant–Petitioner,

v.

Brenda FORBES, Appellee–Respondent.

No. 55A01–9204–CV–119.

Court of Appeals of Indiana,
First District.

March 24, 1993.

Richard W. Lorenz, Hickam and Hickam, Spencer, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee-respondent.

BAKER, Judge.

Petitioner-appellant Donald Forbes appeals the trial court's December 31, 1991 order favoring his ex-wife respondent-appellee Brenda Forbes. That order (1) required him to pay his lump sum social security disability benefit for the reduction of his child support arrearages owed to Brenda, (2) required him to forward any future disability benefits he receives on behalf of his remaining unemancipated child to the IV–D office of the Morgan County Prosecutor's office, and (3) required him to pay $35.00 per week in child support. Donald raises several issues for our review, which we restate as:

I. Whether social security disability benefits are attributable as income under the Indiana Child Support Guidelines.

II. Whether the trial court erroneously applied Donald's entire lump sum social security disability benefit toward his child support arrearage.

III. Whether the trial court erred by not crediting Donald for social security disability payments made directly to his children.

IV. Whether the trial court's oral and written orders modifying Donald's child support obligation were inconsistent.

## STATEMENT OF FACTS

Brenda and Donald's marriage was dissolved by judicial decree on January 6, 1986. Donald was ordered to pay $94.00 per week in child support for their three children, Donnie, Joyce, and Michelle. The child support was payable in gross and did

not separate or assign a particular amount for each child.

Later that year, Brenda began receiving financial assistance under the Aid to Families with Dependent Children (AFDC) program. Meanwhile, Donald moved to Iowa, remarried, and, at some point in 1986, became physically disabled.

In August 1986, Donald, acting without court approval, deviated from the original child support order. First, he reduced his child support payments to $62.00 per week when Donnie, the oldest child, turned eighteen. Later, during the first half of 1988, Donald refused to make any child support payments whatsoever; when Joyce graduated from high school and moved to Iowa to live with him, however, he resumed paying child support, albeit only $35.00 per week.

As a result of his disability, and after a lengthy application process, Donald received a lump sum social security disability benefit in 1990;[1] thereafter, Donald received a monthly disability benefit of approximately $490.00 per month. Additionally, Michelle, the parties' lone remaining minor child, received $170.00 per month as a result of her father's disability.

On October 3, 1990, Donald filed a modification of child support petition asking that his child support obligation be reduced and that he be found current in his child support payments. At the November 25, 1991 hearing on his motion, Donald claimed he had not been given credit for numerous child support payments he made in Iowa. He acknowledged, however, that he had never received a court order authorizing him to pay anything less than the original $94.00 per week. He further acknowledged that he is employed in Iowa and currently earns $184.00 per week.[2]

The trial court concluded that Donald's child support arrearage was $12,194.00 and ordered him to apply his lump sum disability benefit toward the arrearage. The trial court further concluded that the $170.00 per month Michelle was receiving as a result of her father's disability should be applied toward Donald's current child support obligation in lieu of child support; additionally, however, the trial court ordered Donald to pay child support of $35.00 per week. Donald appeals the trial court's modification order.

## DISCUSSION AND DECISION

### I. Disability Benefits

■ Donald argues his social security disability benefits are excluded from his income for the purpose of computing child

---

1. The lump sum disability award included payments accruing from the date of Donald's disability in 1986. At the time of the 1991 modification hearing, this sum was being held by an Iowa attorney on Donald's behalf as "savings." *Record* at 196.

2. Contrary to traditional notions of social security disability benefits, under the Federal Achieving Self Support program, a disability claimant can earn income during a "trial work period" yet still receive disability benefits. Under this program, a trial work period enables an individual to test his or her ability to return to work. 20 C.F.R. sec. 404.1592(a).

   In *McDonald v. Bowen* (7th Cir.1986), 818 F.2d 559, the court concluded that a disability claimant may receive disability benefits and still earn income during a trial work period. In reaching this conclusion, the court stated:

   > Under the [Social Security] Act, any services rendered by an individual during a trial work period 'shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month

during such period.' 42 U.S.C. sec. 422(c)(2). In other words, a period of trial work enables an applicant to return to the work environment without affecting his or her entitlement to disability benefits.

*Id.* at 563.

20 C.F.R. sec. 404.1592(e) limits the duration of a trial work period. It provides:

> The trial work period begins with the month in which you become entitled to disability insurance cash benefits.... It ends with the close of whichever of the following calendar months is the earlier.
>
> (1) The 9th month (whether or not the months have been consecutive) in which you have performed services; or
>
> (2) The month in which new evidence, other than evidence relating to any work you did during the trial work period, shows that you are not disabled, even though you have not worked a full nine months. We may find that your disability has ended at any time during the trial work period if the medical or other evidence shows that you are able to do substantial gainful employment.

support under Ind. Child Support Guideline 3(A)(1) because they derive from a "means-tested" program. According to the Comments to Child Supp. G. 3, a means-tested program is public assistance that is provided on the basis of one's income level.

Child Supp. G. 3(A)(1) provides:

"[W]eekly gross income" is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed and imputed income based upon "in-kind" benefits. Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from ... social security benefits.... Specifically excluded are benefits from means-tested public assistance programs, including, but not limited to, Aid to Families with Dependent Children, Supplemental Social Security Income, Food Stamps and General Assistance.

Contrary to Donald's position, however, social security disability benefits are not "means-tested" income; instead, disability benefits are awarded until the recipient recovers sufficiently from a disability, regardless of the recipient's income level. *See generally Whitt v. Secretary of Health and Human Services* (C.D.Ill. 1988), 680 F.Supp. 1258 (economic conditions and financial considerations are irrelevant in determining whether claimant is eligible for disability benefits; to receive disability benefits, claimant must show that inability to work is medical in nature). Moreover, social security benefits are specifically included in the definition of "weekly gross income" under Child Supp. G. 3, while supplemental social security income is specifically excluded. Disability benefits fit within the former category and not the latter. Therefore, a trial court may properly include social security disability benefits when it calculates an obligor's child sup-

port obligation.[3] *See Esteb v. Enright by State* (1990), Ind.App., 563 N.E.2d 139, 141 n. 2.

■ Additionally, Donald challenges the trial court's failure to complete a child support worksheet in conjunction with its child support modification order. Donald, however, failed to submit his own worksheet to the trial court, as required by Child Supp. G. 3 B. If no worksheet was presented to the trial court, the fault is Donald's, not the trial court's. Because all trial court determinations come to us clothed in a presumption of correctness, *Turpen v. Turpen* (1989), Ind.App., 537 N.E.2d 537, we will not assume the trial court failed to follow the guidelines based merely on the absence of worksheets in the record. Donald has failed to overcome the presumption of correctness.

## II. Arrearage

Donald argues the trial court erred by ordering him first to recover his lump sum disability award from his Iowa attorney and then pay the entire amount toward the reduction of his child support arrearage. He contends that he should have been ordered to pay only 60% of the lump-sum award toward the arrearage, not 100%. To support his contention, Donald relies on Child Supp.G. 2 which provides, *inter alia,* that a child support award can never exceed 60% of the obligor's weekly available income.[4]

■ The Indiana Supreme Court adopted the child support guidelines for "use in all Indiana courts in all proceedings where child support is established or modified on and after October 1, 1989." Commentary, Ind. Child Support Guideline 1. To the extent that a portion of Donald's lump-sum award accumulated prior to October 1, 1989, the guidelines were not yet in effect, and hence the 60% restriction is inapposite. On the other hand, as to the

---

3. As discussed *infra* in Issue IV, we are unclear as to whether the trial court considered Donald's monthly disability benefit when it calculated his child support obligation. Despite this confusion, we wish to make it clear that disability benefits are properly includable when determining an obligor's weekly available income.

4. Donald also argues 15 U.S.C. sec. 1673 supports his position. This statute is plainly inapplicable, however, because it applies to the garnishment of earnings in the context of consumer credit protection.

portion of his award accumulated after the guidelines became effective, Donald presented no evidence to the trial court to show what his wages were, if any, during this period. Without this evidence in the record, there is no way to determine whether the 60% restriction was followed. Moreover, as noted *supra* in Issue I, Donald failed to provide the trial court with a child support worksheet. We cannot allow Donald to avoid his child support obligations by hiding behind an evidentiary vacuum he created. There was no error.

### III. Direct Payments

■ Donald next asserts that an accurate calculation of his arrearage cannot be made until he is given credit for disability payments previously made directly to his children. We agree that any direct payments should be applied to reduce his arrearage. The record reveals no evidence of these payments, however. Had Donald supplied evidence of these payments, we may have remanded this case for a recalculation of his arrearage. Because Donald failed to submit proof of the alleged payments' existence, and because trial court judgments are clothed with a presumption of correctness, *Turpen, supra,* we find no error.

### IV. Inconsistent Order

■ Finally, Donald asserts the trial court's conclusions in its modification order of December 31, 1991 were inconsistent with its oral conclusions from the November 25, 1991 hearing. As a result, Donald claims he is unclear as to the amount of child support he is now obligated to pay.

During the November 25, 1991 hearing, the trial court announced its conclusions with the condition that a written decree would be prepared by one of the parties and submitted to the trial court for approval. In its conclusions, the trial court stated:

Support from now on will be $35.00 for Michelle. Well, no ... excuse me ... It will be the social security check ... If he's [sic] on social security. If not, we'll reduce it and show $35.00 and show the petition to modify.

*Record* at 274. Thereafter, in its December 31, 1991 modification order, the trial court concluded:

6. That Donald Forbes is to receive social security benefits for Michelle Forbes due to his disability and that said future social security benefits, so long as he shall receive them, shall be in lieu of child support.

\*   \*   \*   \*   \*   \*

8. That the child support to be paid by Donald Forbes for Michelle Forbes is hereby modified as of October 5, 1990 to the amount of $35.00 per week.

*Record* at 85–86.

Donald contends, and Brenda agrees, that in its modification order, the trial court intended to require him to pay $35.00 per week in child support only if the $170.00 per month Michelle is receiving as a result of her father's disability ceases. Although we agree the trial court's modification order is unclear, we do not agree with the parties' assessment of the trial court's intent; instead, we must remand this case to allow the trial court to clearly and specifically establish Donald's child support obligation.

On remand, the trial court must first clarify whether Donald's current child support obligation is only the $170.00 per month Michelle receives as a result of her father's disability,[5] or if Donald must supplement this monthly payment by contributing a portion of his weekly available income as set forth in the child support guidelines.

After making this threshold determination, if the trial court concludes that Donald must supplement the $170.00 monthly payment, the trial court must then recalculate his weekly available income by consid-

---

**5.** If the trial court concludes that the $170.00 monthly payment satisfies Donald's child support obligation, and if this payment schedule deviates from the amount of support dictated by the child support guidelines, the trial court must articulate its reasons for the deviation. *See* Ind. Child Support Rule 3.

ering four separate scenarios. First, if Donald is working, and receiving monthly disability payments, the trial court must include both amounts in calculating Donald's weekly available income.[6] *See* Issue I. Second, if Donald is working, but not receiving monthly disability payments, then only his salary should be considered. Third, if Donald is receiving disability benefits, but not working, his monthly benefit must be included as part of his weekly available income. Finally, if Donald is neither receiving disability benefits nor working, his child support obligation must be calculated according to his potential income.[7]

The trial court's judgment is remanded in accordance with Issue IV. In all other respects, the judgment is affirmed.

NAJAM and BARTEAU, JJ., concur.

---

6. For example, under this scenario, Donald's weekly available income, before deducting any health insurance coverage he provides to Michelle, would be:

   $184.00 + $490.00/4.2 = $300.66.

   Because the record does not reveal Donald's health insurance expense, we cannot complete this calculation, and leave this matter for the trial court.

7. Under Child Supp. G. 3, "weekly gross income" for an unemployed or underemployed individual is calculated on the basis of potential income. It is axiomatic that an individual's disability benefits will continue so long as one's earnings do not exceed the parameters established by the Achieving Self Support program. Without venturing into a complex examination of these parameters, we observe that if Donald's disability benefits cease for whatever reason, as a matter of logic he would be deemed capable of returning to work.