In re the Marriage of Michael TRUMAN,
Appellant (Respondent Below),

v.

Anita TRUMAN, Appellee
(Petitioner Below).

No. 48A04–9307–CV–260.

Court of Appeals of Indiana,
Fourth District.

Oct. 13, 1994.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, for appellant.

Arden W. Zobrosky, Marion, for appellee.

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Michael Truman appeals the trial court's judgment of property division, child support and attorney fees. We affirm in part, reverse in part, and remand.

### ISSUES

1. Did the trial court abuse its discretion by awarding Anita a property settlement of $6,600.00 when she had requested $2,600.00 and the total value of the marital estate was approximately $100,000.00?

2. Was the trial court's child support order clearly erroneous because the trial court a) offset Michael's support obligation to his two children from a previous marriage by the social security death benefits which these children receive as a result of their mother's death; b) failed to deduct one-half of Michael's FICA tax payment from income earned in his sole proprietorship in determining his gross income from the sole proprietorship; and c) did not require Anita to spend a sum equal to 6% of the child support that she receives before Michael is required to contribute towards payment of the uninsured medical expenses?

3. Did the trial court abuse its discretion in ordering Michael to pay $1,000.00 of Ani-

ta's attorney fees when she did not request them at the final hearing?

### FACTS

Michael and Anita Truman were married in June 1990. They separated in May 1991, their son was born in August 1991, and their marriage was dissolved in June 1992. Michael has two children, ages six and nine, from a previous marriage. His first wife is deceased.

Michael is a high school teacher, as well as a cross country coach and a class sponsor. In 1992, his salary as a school teacher plus extra compensation for coaching and sponsoring a class was $27,793.00. Michael also owns Truman Distributing, a sole proprietorship which, in 1992, had a gross income of $61,000, a depreciation allowance of $2,918.00, and a profit of $14,908.00. The trial court added back a portion of the depreciation, and found that Michael had an annual gross income of $16,000 from the sole proprietorship. His former father-in-law started the business and gave it to Michael in the mid–1970's. The trial court found that Michael had a gross weekly income of $842.00. Michael's two children from the previous marriage receive social security survivors' benefits of $1,066.00 per month.

During the marriage, Anita worked 10 hours per week at the distribution business. Her duties included writing checks for accounts payable and contacting displayers and distributors. She was paid $1,500.00 per month and the money was placed in the parties' joint account. Anita also performed homemaker tasks and cared for Michael's two children from his previous marriage while Michael worked. Anita is currently a receptionist for an insurance agency. She earns $6.50 per hour and works 40 hours per week—for a gross income of $260.00 per week.

The trial court's final decree and judgment, which was entered on April 12, 1993, included the following pertinent findings:

3. The petitioner-wife is a receptionist for an insurance agency with a gross income of $260.00 per week. The respondent-husband is a teacher whose current employment contract provides for an annual payment of $27,800.00. In addition, the respondent has a Home Interiors delivery business. His 1992 Schedule C shows net income of $14,908.00, plus a depreciation allowance of $2,000.00. Pursuant to the discretion available under the current Support Guidelines, only a portion of that depreciation will be added back, and the respondent's annual income from the delivery business for child support purposes is found to be $16,000.00. Based on the foregoing, the respondent is found to have weekly adjusted gross income of $842.00.

4. As previously noted, the respondent is the sole support of two minor children from his first marriage. However, as observed by the Court in its Memo of March 16, 1992, our State Support Guidelines suggest an average weekly need of $263.00 for the care and maintenance of those children. That sum represents a monthly need of $1,131.00. Fortunately, the respondent receives a monthly Social Security check of $1,106.00 to assist with the care and maintenance of the children. The Court has determined that the difference of $25.00 per month should be subtracted from the income Mr. Truman has available for other obligations, including Brandon's support.

5. Based upon the above data, the Court has calculated Brandon's basic support need, together with employment-related child care expenses, and from that sum has made an adjustment for regular visitation. Accordingly, the Court now finds that the respondent, Michael Truman, should pay the petitioner the sum of $150.00 per week for child support, effective April 2, 1993, and each week thereafter. Said sum shall be paid by Wage Assignment.

7. At the time of separation, the net marital estate was worth approximately $100,-000.00 (It is impossible to be precise since evidence was not offered on the value of the business and much of the personal property.)

8. Although Indiana Law has a presumption favoring an equal division of the marital estate, such division is not reasonable given the duration of the marriage and the facts of acquisition.

9. Because almost all of the assets brought into the marriage, including the real estate and the business venture, had been Mr. Truman's for some time, equity would suggest to Mrs. Truman only her fair share of appreciation during the marriage and of assets accumulated during the marriage. In addition, Mr. Truman should be required to reimburse the petitioner for the value of personal property that he maliciously and intentionally destroyed.

10. Based on all the evidence, the Court concludes that the petitioner should be awarded the sum of 4,000.00 as her share of appreciation and of assets accumulated during the marriage and for contribution to the family business. In addition, to said sum, the petitioner should be awarded $2,600.00 for the value of her ring, lingerie, and other personal effects which the respondent destroyed or gave away. Accordingly, the Court finds that a JUDGE-MENT [sic] for $6,600.00 should be entered against the respondent and in favor of the petitioner, that said debt should be paid in full, without interest, within (6) month's [sic] of today's date, and that the same should be a lien upon the marital residence until paid.

The court's order states in pertinent part as follows:

3. Respondent shall pay to the Clerk of Madison Superior Court, Madison County, Indiana, as trustee for remittance to Petitioner the sum of $150.00 per week, effective April 2, 1993, and each week thereafter. Said sum shall be paid by wage assignment.

4. The respondent-husband shall maintain health and hospitalization insurance for Brandon and shall provide an insurance card or properly coded claim forms for use by the petitioner. The petitioner shall pay the first $350.00 of uninsured medical expense for Brandon each calendar year. Thereafter, the respondent, Michael Truman, shall pay seventy-five per cent (75%) of all uninsured medical, dental, orthodontic and prescription expenses for the child arising during the calendar year.

5. In settlement of the property rights of the parties pursuant to I.C. 31–1–11.5–11, as set forth in the above findings, the Court does now divide the property of the parties as follows:

(a) The respondent-husband shall be awarded all right, title and interest in the marital residence located at R.R. 2, Box 139–A, Alexandria, Madison County, Indiana, subject to the debts and obligations thereon, and subject further to a lien in favor of the petitioner as set out below. The husband is also awarded all right, title and interest in the Home Interiors delivery business.

The respondent is awarded all right, title and interest in his teacher's retirement program, and he is awarded the 1990 Honda Accord, subject to the debt thereon which he shall assume and pay.

(b) Petitioner is awarded the sum of $4,000.00 as her share of appreciation and of assets accumulated during the marriage and for her contribution to the family business. In addition to said sum, the petitioner should be awarded $2,600.00 for the value of her ring, lingerie, and other personal effects which the respondent destroyed or gave away. The Court orders Judgement [sic] for $6,600.00 should be entered against the respondent and in favor of the petitioner, that said debt should be paid in full, without interest, within six (6) months of today's date, and that the same should be a lien upon the marital residence until paid.

(c) With respect to all other personal property, each party is awarded the property now in his or her possession, which had not otherwise been noted in this Order.

6. The Court orders that the respondent should pay the petitioner's attorney the additional sum of $1,000.00 within sixty (60) days of today's date, to be applied to his fees in this cause. (A preliminary order of $600.00 was issued July 12, 1991.)

Michael now appeals the trial court's order arguing that the trial court erred in dividing the marital property, determining child support, and awarding attorney fees.

## DECISION

### I. *Property Division*

■ A trial court's decision regarding the division of marital property is reviewable for an abuse of discretion. *Finch v. Finch* (1992), Ind.App., 592 N.E.2d 1260, 1261, *reh'g denied.* We consider only that evidence most favorable to the trial court's disposition of the property. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, 163, *trans. denied.* The trial court's disposition of marital property must be looked at as a whole, not item by item. *Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653, 657. We will reverse a trial court only where the result reached is clearly against the logic and effect of the facts and circumstances before the court. *Finch,* at 1261.

■ Property divisions are governed by Ind.Code 31–1–11.5–11,[1] which creates a rebuttable presumption that an equal division of assets is just and reasonable. *Castenada v. Castenada* (1993), Ind.App., 615 N.E.2d 467, 470. However, a trial court retains discretion in dividing assets, and the trial court can deviate from an equal division, so long as the court sets forth a basis for its decision. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 653. We will presume that the trial court acted properly in dividing marital assets. *Benda,* at 164.

Here, the trial court concluded that the marital estate was worth approximately $100,000.00. Anita testified that she wanted $600.00, the value of clothes that Michael had destroyed or disposed of after the separation, and her engagement ring worth $2000.00. Michael testified that he was agreeable to this settlement. However, the trial court awarded Anita $6,600.00, and Michael now argues that the trial court abused its discretion by awarding Anita $4,000.00 more than she requested.

■ Michael argues that the trial court did not have the discretion to give Anita more than she requested. In support of his argument, Michael cites *Brademas v. Hartwig* (1977), 175 Ind.App. 4, 369 N.E.2d 954. In *Brademas,* the issue was whether the defendant had a right to use an easement. The trial court found that the defendant had a right to use the easement, and also enjoined the plaintiff from interfering with the defendant's use of the easement. *Id.* 369 N.E.2d at 958. This court found that the trial court erred in granting the injunction because the defendant had not requested such relief. *Id.* We noted that a trial court's discretion is limited to relief based on the issues raised. *Id.* However, *Brademas* is distinguishable from this case. *Brademas* was an easement case, and the trial court ordered equitable relief which was not requested. Here, the trial court divided marital property pursuant to the statute which governs such divisions. The trial court complied with the statute by setting forth a basis for its deviation from an equal division of property.[2]

---

1. Ind.Code 31–1–11.5–11(c) states as follows:
 The court shall presume than an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
 1. The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
 2. The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.
 3. The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of the children.

4. The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
5. The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

2. The trial court's Final Decree and Judgment states in pertinent part:
 8. Although Indiana law has a presumption favoring an equal division of the marital estate, such division is not reasonable given the duration of the marriage and the facts of acquisition.
 9. Because almost all of the assets brought into the marriage, including the real estate and the business adventure, had been Mr. Truman's for some time, equity would suggest to Mrs. Truman only her fair share of appreciation during the marriage and of assets accumulated during the marriage. . . .

■ Michael next argues that Anita and Michael's testimony can be characterized as a stipulation as to how the property should be divided, and should be given the same binding effect as a stipulation. We disagree. "Stipulations have been defined as agreements between counsel respecting business before the court. Courts generally favor stipulations which admit certain designated *facts* for the purpose of simplifying and expediting litigation." *Anacomp, Inc. v. Wright* (1983), Ind.App., 449 N.E.2d 610, 615. (citations omitted). (emphasis added). Michael and Anita's testimony was not a stipulation of facts. *See Keen v. Keen* (1994), Ind.App., 629 N.E.2d 938, 940. Anita and Michael merely testified as to the relief which they requested from the court.

■ Michael also argues that he and Anita had an agreement that Anita would get $600.00 and the engagement ring. We disagree. There is no evidence that Michael and Anita entered into an agreement regarding the disposition of the marital assets; however, even if they had entered into such an agreement, it would not be binding. Agreements regarding the disposition of marital assets are governed by Ind.Code 31–1–11.5–10, which states in pertinent part:

(a) To promote amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree *in writing* to . . . the disposition of any property owned by either or both of them. . . . (emphasis added).

(b) In an action for dissolution of the marriage the terms of the agreement *if approved by the court* shall be incorporated and merged into the decree and the parties shall ordered to perform them, or the court may make provisions for disposition of property . . . as provided in this chapter. (emphasis added).

Here, there was no written agreement and no court approval. As a result, there was no enforceable agreement.

■ In addition, Michael argues that there is nothing in the record to support the court's order giving Anita $4,000.00 more than she requested. According to Michael, the trial court's assessment of him[3] may have influenced the court's decision to increase Anita's property award by $4,000.00, and, if it did, this was improper because marital fault is not to play a factor in the division of marital assets. *R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 301. We disagree with Michael's argument that there is nothing in the record to support the trial court's order. The trial court awarded Anita the additional $4,000.00 as her share of appreciation and of assets accumulated during the marriage. According to the record, Michael and Anita were married for one year. During that time, Anita worked part-time at Truman Distributing, and she also cared for the marital residence and Michael's two children from his previous marriage. In addition, there is nothing in the record to support Michael's contention that the court's assessment of Michael influenced its decision to increase Anita's property award. The trial court did not abuse its discretion in dividing the marital assets.

## II. *Child Support*

■ A determination of child support based on the Indiana Child Support Guide-

10. Based on all the evidence, the Court concludes that the petitioner should be awarded the sum of $4,000.00 as her share of appreciation and of assets accumulated during the marriage and for contribution to the family business. In addition, to said sum, the petitioner should be awarded $2,600.00 for the value of her ring, lingerie, and other personal effects which the respondent destroyed or gave away.

3. The trial court's memorandum decision states as follows:
"[F]or reasons which are not clear, [Michael] was unable to make the adjustment to a new marriage. He made demands which were inappropriate and unrealistic. The stress of the new relationship, and the disappointment from unfulfilled expectations, adversely affected his attitude, his judgment, and his behavior. He has a battery conviction in Grant County for assaulting his wife. He attempted to manipulate and control her by threatening to kill himself. His destruction of her lingerie, rings and other personal property can only be described as vindictive and immature." (Trial Court's Memorandum Decision, p. 2).

lines will be reversed only where the determination is clearly erroneous. *Matter of Paternity of M.L.B.* (1994), Ind.App., 633 N.E.2d 1028, 1029; *Matter of Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, 134, *reh'g denied.* Typical formulations of the clearly erroneous test declare that a child support order will be affirmed unless it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Carr v. Carr* (1992), Ind., 600 N.E.2d 943, 945.

A. Social Security Benefits

The trial court found that pursuant to the Child Support Guidelines, Michael had a support obligation to his two older children of $263.00 per week—or $1,131.00 per month. The trial court then subtracted the social security benefits which the children receive on behalf of their deceased mother ($1,106.00) from Michael's obligation to support them. The court found that this $25.00 per month—$5.77 per week—should be subtracted from Michael's weekly gross income in arriving at his weekly adjusted income, which was used to compute his child support obligation to his youngest child. As a result, the trial court offset Michael's support obligation to his two older children by the social security benefits that the children receive on behalf of their deceased mother.

Michael now argues that the trial court's order was clearly erroneous because it requires the children from his previous marriage to "support themselves solely on their own resources while indulging in the fiction that the father has no obligation to support

those children, and therefore essentially all but $25.00 of his income may be taken into account in fixing the support of the child of this short lived marriage." [4] (Michael's Brief, p. 17).

Whether Michael's support obligation to his two older children can be offset by the social security benefits that the children receive on behalf of their deceased mother is an issue of first impression in our state.[5] An analysis of the law in other jurisdictions leads us to hold that Michael's support obligation cannot be offset by the children's social security benefits.

The Kansas Court of Appeals recently addressed a similar issue in *In re Marriage of Beacham* (1994), 19 Kan.App.2d 271, 867 P.2d 1071. In *Beacham,* an adoptive father argued that Social Security death benefits that his daughter received as a result of her natural father's death should offset the adoptive father's support obligation. The court first found that the adoptive father had a duty to support his adopted child. *Id.* The court further found that the social security benefits did not relieve the adoptive father's duty to support the child because the payments received by the child were in no way attributable to him. *Id.* The court also cited decisions from other jurisdictions which are consistent with this result. *See In re Marriage of Foley* (1993), Iowa, 501 N.W.2d 497 (social security benefits payable to adopted children on behalf of their deceased natural father could not offset child support payments owed by adoptive father); *Traylor v. Burns* (1990), Me., 570 A.2d 1204 (father was not entitled to a credit for social security

4. Michael further argues:

"It would appear quite unrealistic to believe that had the second marriage survived, the father would only have expended the equivalent of $3.00 a week of his own funds on each of his two children from his first marriage and devoted the rest of his available income to the support of his youngest child. The trial court's decision places the youngest child in an improperly preferred position insofar as being supported by his father is concerned and for all practical purposes denies the children of the first marriage any right to share in the income of their father." (Michael's Brief, p. 25).

5. Anita argues that according to the Child Support Guidelines, the weekly gross income of each

parent includes social security benefits. In support of her argument, Anita cites the Indiana cases which have discussed social security benefits and child support. *See Esteb v. Enright* (1990), Ind.App., 563 N.E.2d 139; *Forbes v. Forbes* (1993), Ind.App., 610 N.E.2d 885; *Patrick v. Patrick* (1988), Ind.App., 517 N.E.2d 1234. We note that none of these cases is applicable to the present case because all involve a situation in which a disabled parent's benefits are used to satisfy that parent's support obligation. Here, the social security benefits are paid to the children on behalf of their deceased mother, not on behalf of their surviving custodial parent, Michael.

death benefits received by the child on behalf of her deceased stepfather).

In a similar case, the Oklahoma Court of Appeals found that a court order offsetting an adoptive father's support obligation by social security death benefits which the child received on behalf of her deceased natural mother was erroneous because it required the child to support herself. *Graham v. Graham* (1988), Okla.App., 761 P.2d 1298, 1298.

 Here, Michael has a duty to support his two older children. The social security payments that his children receive are not attributable to him, and they can not be used to offset his obligation to these children.[6] The trial court erred in offsetting Michael's support obligation to his two older children by the social security benefits that they receive on behalf of their deceased mother.

### B. FICA Tax Payment

 Michael argues that the trial court erred because it failed to deduct one half of his FICA tax payment from income earned in the sole proprietorship. Anita argues that the trial court did not err because the court has flexibility in the guidelines. We agree with Michael. Indiana Child Support Guideline 3A.2 states as follows:

> The self-employed *shall* be permitted to deduct that portion of their FICA tax payment that exceeds the FICA tax that would be paid by an employee earning the same Weekly Gross Income. (emphasis added).

The commentary to Child Supp.G. 3(A) states as follows:

> The self-employed pay FICA at twice the rate that is paid by employees. At present rate, the self-employed pay fifteen and thirty-one hundredths percent (15.30%) of their gross income to a designated maximum, while employees pay seven and six-

ty-five percent (7.65%) to the same maximum. The self-employed are therefore permitted to deduct one-half of their FICA payment when calculating Weekly Gross Income.

The mandatory language of the guidelines is clear. The trial court erred in failing to deduct one-half of Michael's FICA tax payment from income earned in his sole proprietorship in determining his income from the sole proprietorship.

### C. Uninsured Medical Expenses

The trial court ordered Anita to pay the first $350.00 of uninsured medical expenses for the child each year, and Michael was ordered to pay 75% of the uninsured medical expenses which exceed $350.00. Michael argues that the trial court erred because it did not require Anita to spend a sum equal to 6% of the child support that she receives before Michael is required to contribute towards payment of the uninsured medical expenses. Anita argues that the trial court has discretion in apportioning uninsured medical expenses. Again, we agree with Michael.

Child Supp.G. 3(E)2 states in pertinent part:

> Ordinary uninsured medical expenses should be paid by the custodial parent up to six percent (6%) of the basic child support obligations (line 4 of the worksheet) annually since that obligation as well as the figures found in the Guideline Schedules for Weekly Support Payments include six percent (6%) for ordinary uninsured health costs.

The Commentary to Child Supp.G. 3(E)2 states in pertinent part:

> It has been the practice in many courts to apportion between the parents the medical, dental and optical expenses that exceed insurance, usually on an equal basis. The data on which the Guideline schedules are

---

6. We note that Michael is a representative payee for his children. *See* 20 C.F.R. § 404.2010 ("Generally, if a beneficiary is under age 18, we will pay benefits to a representative payee."); § 404.2021(b) ("For beneficiaries under age 18, our preference is a natural parent ... who has custody of the beneficiary...."); § 404.2035(a) (A representative payee has a responsibility to use the payments he or she receives only for the use and benefit of the beneficiary in a manner ... in the best interests of the beneficiary."); § 404.2045 ("After the representative payee has used the benefit payments consistent with the guidelines in this subpart ..., any remaining amount shall be conserved or invested on behalf of the beneficiary.")

based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense. The noncustodial parent is, in effect, prepaying health care expenses every time a support payment is made. Consequently, the Guidelines *require* that the custodial parent bear the cost of health care expense up to six percent (6%) of the basic child care obligation found on line 4 of the worksheet. (emphasis added).

█ Again, the mandatory language in the Guidelines is clear. The trial court erred because it did not require Anita to spend a sum equal to 6% of the child support that she receives before Michael is required to contribute towards payment of the uninsured medical expenses.[7]

### III. *Attorney Fees*

█ We review an award of attorney fees for an abuse of discretion. *Beeson v. Christian* (1992), Ind., 594 N.E.2d 441, 442. The trial court ordered Michael to pay $1,000.00 of Anita's attorney fees. Michael argues that the trial court abused its discretion because Anita did not request attorney fees at the final hearing. We disagree.

█ We have stated previously that a trial court may award attorney fees at any stage of the dissolution proceeding. *Dahnke v. Dahnke* (1991), Ind.App., 571 N.E.2d 1278, 1282; *Sovern v. Sovern* (1989), Ind.App., 535 N.E.2d 563, 567. Here, Anita requested attorney fees of $600 "with such additional fees as may be required" in her Motion for Provi-

sional Orders. Record at 14. The final judgment and decree ordered Michael to pay Anita's attorney "the *additional* sum of $1,000.00", and referenced the preliminary order of $600. (emphasis added). Record at 50. Thus, the trial court considered such additional fee to be within the contemplation of Anita's original request for "such additional fees as may be required." While it would have been a better practice for Anita to request her attorney fees at the final hearing, we cannot say that the trial court abused its discretion in ordering Michael to pay $1,000.00 of Anita's attorney fees.

We affirm the property division and the award of attorney fees. We remand for a recalculation of child support consistent with the Child Support Guidelines and this opinion.

CHEZEM, J. concurring.

SULLIVAN, J. concurring with separate opinion.

SULLIVAN, Judge, concurring.

I agree with the decision the majority reaches in this case. Nevertheless, I am prompted to make some observations upon the issue of child support. Michael has two children, ages six and nine, from a previous marriage. He also has a younger child born of his marriage to Anita, the dissolution of which is at issue here. Both older children live with Michael. The crucial factor in the child support dispute in this case concerns the amount of support Michael must pay to the two older children, as it may affect the support obligation owed to the younger child.

---

7. We decline to follow *Lulay v. Lulay* (1991), Ind.App., 583 N.E.2d 171, where the First District found that the trial court has discretion in apportioning uninsured medical expenses because the Child Support Guidelines have been amended since that case was decided. At that time, the Commentary to the Guidelines stated as follows:

> It has been the practice in many courts to apportion between the parents the medical, dental and optical expenses that exceed insurance, usually on an equal basis. The date on which the Guidelines schedules are based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense. It is suggested, if an apportionment is made, that

the custodial parent absorb a specified amount of expense per occurrence of illness (that is, for one particular illness or injury) before the noncustodial parent is required to contribute. . . . As an alternative, the custodial parent could be ordered to absorb a specified amount of medical expenses annually before the obligor is required to begin paying toward medical expenses.

The most recent amendments to the Child Support Guidelines became effective on March 1, 1993. We note that both parties briefed this issue based on the amended guidelines. The amendments are clear that the custodial parent is *required* to bear the cost of health care expense up to 6% of the noncustodial parent's basic child support obligation.

Therefore, although the Child Support Guidelines are particularly helpful in assessing Michael's support obligation to the two older children, they do not apply in the same sense or in the same degree of presumptive application as they would in computing child support due under the dissolution decree the trial court entered in this case.

In any event, it is not mandatory that a court apply the Indiana Child Support Guidelines when arriving at an amount of support in a dissolution decree. *See Indiana Child Support Guidelines Statement of History* at 1115, *Burns Ind.Stat.Ann., Court Rules Ann.* (Code Ed.1994). Rather, the Guidelines are an evidentiary rebuttable presumption, which courts should follow absent extenuating circumstances. *See* Indiana Supreme Court Order No. 95S00–8904–MS–288 (April 12, 1989). *See also Indiana Child Support Guidelines* Support Guideline 1 Commentary. It would therefore seem appropriate that a trial court properly may consider the collateral sources of support that one of the spouse's children from a prior marriage receive when fixing the support due a child of the marriage being dissolved.

The Guidelines themselves clearly contemplate that a court should consider various factors that are not susceptible to precise, rigid determination and application. Because the amount of support a court should award largely depends upon available financial resources, it is clear that the court should examine the totality of the circumstances when applying the Guidelines. As the Commentary to the Guidelines notes, it is for this reason that a court may impute income to a parent in some instances. *See, e.g., Indiana Child Support Guidelines* Support Guideline 3, Commentary 2e. While the Commentary observes that it *"may be* inappropriate" to consider occasional gifts or other contributions from collateral sources, the cautionary language does not absolutely preclude a court from considering collateral source income under certain circumstances. It is my view that a situation similar to that before us might well constitute such circumstances.

The collateral source payments here, are definite and fixed and are certain to continue unless and until the child or children reach eighteen years, marry or die. They are therefore unlike the speculative gratuitous support sources which will not ordinarily result in diminishing one's support obligation. Under certain circumstances it may be reasonable to conclude that a custodial parent whose children receive substantial support payments from an independent source, e.g., Social Security Death Benefits, will have disposable income of his own which otherwise would be required for the support of the children living with him. It is not unreasonable to require him to apply a portion of that additional disposable income to the support of the child of the recent marriage. When a combination of certain and non-speculative payments from a collateral source and the contributions of the custodial parent (the father in this case) fully, if not handsomely, support the children of the former marriage, the child of the more recent marriage living with the other parent should not have his support needs slighted.

Be that as it may, as the majority points out, courts from other states do not permit social security benefits not directly attributable to the obligor himself to be credited against the support obligation. Because the weight of that authority has not, to my knowledge, been challenged, my views do not engender such conviction as to prompt a dissent. For this reason, I concur with the majority's decision that the trial court erred in offsetting Michael's support obligation to his two older children by the social security benefits they receive on behalf of their deceased mother.