**In re the Marriage of Joyce E. HARLAN, Appellant (Respondent),**

**v.**

**Hal P. HARLAN, Appellee (Petitioner).**

**No. 49A02–8710–CV–00422.**

Court of Appeals of Indiana, Second District.

Oct. 10, 1989.

Gary R. Landau, John D. Schiff, Indianapolis, Deborah L. Farmer,* Campbell, Kyle & Proffitt, Noblesville, for appellant.

Molly P. Rucker, Michael Cheerva, Indianapolis, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Respondent-appellant Joyce Harlan (Joyce) appeals from the trial court's divi-

* Appearance filed Oct. 5, 1989.

sion of property in the dissolution of her marriage to Hal Harlan (Hal), claiming the trial court abused its discretion when it deducted from the marital estate the possible tax liability which would be incurred if Hal sold one of his businesses, and when it valued the marital residence. Hal cross-appeals, claiming the trial court incorrectly interpreted the parties' ante-nuptial agreement.

We reverse in part and affirm in part.

## FACTS

The facts most favorable to the judgment reveal that the parties were married on January 26, 1980, after having executed an ante-nuptial agreement. At the time of the marriage Hal had a net worth in excess of $1.2 million. Among his assets was approximately three-fourths ownership of Harlan Industries, Inc., which later became Harlan, Sprague, Dawley, Inc. (HSD). He also owned several other small businesses. Hal's income in 1985 was over $270,000.

Before the marriage, Joyce worked as a realtor, and continued to do so during the first year of the marriage. According to the Court's Findings of Facts, # 44, her "contribution to the growth of the subject businesses was negligible and was often, in fact, negative and disruptive to the operation of the business." *Record* at 54. But, Joyce "did provide nominal contribution to the marital household." Finding of Fact # 45, *Record* at 54.

During the marriage, the marital residence was constructed, and Hal's business assets continued to increase in value. The value of the marital estate was in excess of $4 million at the time of separation. Hal petitioned for dissolution on January 2, 1986, and the final hearings on the dissolution were held in March of 1987. In June, 1987, Hal moved to set aside the parties' stipulation as to the value of the marital residence.

The trial court valued the marital residence using the information contained in Hal's motion to set aside the stipulated value of the residence. The trial court also

concluded that the ante-nuptial agreement precluded Joyce from receiving any portion of HSD *only* during the first five years of the marriage. Therefore, that portion of the agreement was no longer in effect, as more than five years had passed between the parties' marriage and the filing of the petition for dissolution.

The trial court's division of the marital property awarded Joyce a total of $924,581, consisting of the marital residence, a car, household and office furniture, a boat, furs, stocks and cash, and including $427,-162 in cash to be paid over a period of one hundred eighty months, with a three percent rate of interest.

In this disposition of the property, the trial court apparently attempted to divide the value of the *increase* in the marital estate during the marriage evenly between the parties. However, in its calculation of the value of HSD, it subtracted from HSD's value the amount of tax liability which would be incurred *if* all of Hal's shares of stock were sold, approximately $1.5 million. The trial court also determined that HSD was highly leveraged and Hal could not pay Joyce's share of the estate with a lump sum payment without selling some assets.[1]

## ISSUES

Joyce presents three issues for our review, and Hal cross-appeals with two additional issues. Because we reverse, we will only consider Joyce's first two issues and Hal's second issue, which are:

1. Whether the trial court abused its discretion when it subtracted the value of the possible tax liability from the value of HSD?

2. Whether the trial court erred when it determined the value of the marital residence?

3. Whether the trial court erred when it interpreted the parties' ante-nuptial agreement?

## DECISION

ISSUE ONE—Did the trial court abuse its discretion when it subtracted the tax liability from the value of HSD?

---

1. Finding of Fact # 41, *Record* at 54.

PARTIES' CONTENTIONS—Joyce argues that the trial court abused its discretion by using a non-existent tax liability to offset the value of HSD. She contends that the relevant statute only contemplates tax consequences that are the result of the property division, not speculative tax liabilities that are avoided by the division plan. Hal argues that the trial court did not abuse its discretion and properly considered the tax consequences of the property disposition.

CONCLUSION—The trial court abused its discretion.

■ Fortunately, there is a relevant statute, enacted in 1985, which provides the solution to this case. Ind.Code 31–1–11.5–11.1 (1988) (hereinafter, the Statute), says:

"The court, in determining what is just and reasonable in dividing property under section 11 of this chapter, shall consider the tax consequences *of the property disposition* with respect to the present and future economic circumstances of each party." (Emphasis supplied.)

Before this statute became effective, this court reviewed decisions of several trial courts treating the tax consequences of a property disposition in marital property divisions. *See Porter v. Porter* (1988), Ind. App., 526 N.E.2d 219, *trans. denied; Qazi v. Qazi* (1986), Ind.App., 492 N.E.2d 692, *trans. denied; Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, *trans. denied; In Re Marriage of Mulvihill* (1984), Ind. App., 471 N.E.2d 10; and *Burkhart v. Burkhart* (1976), 169 Ind.App. 588, 349 N.E.2d 707.

In each of these cases, the trial court's consideration of the tax consequences of the property distribution was upheld. In *Qazi, Wright,* and *Burkhart,* the trial court concluded that because the property disposition did not require the liquidation of any assets which would result in a tax liability, a reduction of the value of the marital estate due to a speculative tax liability was unwarranted. The trial court in *Mulvihill* allowed the deduction of the tax liability from a party's employment retirement plan. This court recognized that, assuming the party did not die before retire-ment, there would be a tax liability resulting from the division plan. *Mulvihill, supra.*

In *Porter,* the trial court allowed the deduction of some of the tax liability from a pension plan, recognizing that there were some tax consequences inherent in the plan, but did not deduct the entire tax liability that would be realized if the plan were liquidated. This court reasoned that because the liquidation of the plan was neither a required nor necessary result of the property division, the claimed tax liability was not incurred by the disposition. *Porter, supra* at 227.

Then, in 1985, the legislature enacted the Statute, which was after *Burkhart, Mulvihill,* and *Wright* were decided, leaving us with the impression of an affirmation of the rationale of *Burkhart, Mulvihill,* and *Wright,* which is also not inconsistent with the results reached in *Qazi* and *Porter.*

The thrust of the Statute is to recognize that there may be in the plan of division of marital property certain tax consequences which should be taken into account. The clear inference is that *only* tax consequences necessarily arising from the plan of distribution are to be taken into account, not speculative possibilities. The Statute specifically limits the trial court to consider only the tax consequences *"of the property disposition."*

There were no inherent, necessarily incurred tax consequences to be taken into account in this case. The trial court determined that HSD was a highly leveraged company that could not pay a large cash payment without selling stock. *Record* at 81. So it structured a disposition of the property so that Hal, who had a substantial income, was only required to pay $2,373.12 per month for 180 months and transfer the marital domicile. *Record* at 84. Hal's salaries in 1985 were $151,690 and his total income was $270,234. *Record* at 80.

There is no evidence in the record whatsoever of other expected tax consequences from this plan of division of the other marital assets. Nothing about cost bases, tax rates, taxable transfers, etc., for either the

marital residence or other property distributed by the plan, except HSD.

Under these circumstances there is no ominous specter of an IRS agent lurking in the shadows waiting to pounce on this plan of distribution.

We can only conclude the trial court abused its discretion and must reverse the property distribution.

ISSUE TWO—Did the trial court err when it determined the value of the parties' marital residence?

PARTIES' CONTENTIONS—Joyce asserts that the trial court erred when it determined the value of the marital residence was different than the value stipulated by the parties. Hal responds that he properly moved to set aside the stipulation on the basis of newly discovered evidence, and therefore the trial court properly exercised its discretion.

CONCLUSION—The trial court erred when it determined the value of the marital residence.

It is well-established that when parties stipulate to a fact, both the parties and the court are bound by that stipulation. *Viccaro v. City of Ft. Wayne* (1983), Ind. App., 449 N.E.2d 1161. The record shows that the parties stipulated the value of the marital residence, including both the house and lot, was $645,000, with $282,250 of equity. *Record* at 6.

The trial court, however, valued the equity in the residence at $356,250. This value was based on an offer to purchase the residence made after the final hearing but before the trial court had entered its judgment. Hal petitioned the court to set aside the stipulation and requested the property be valued at the offered price. In its judgment, the trial court valued the residence at that offered price.

As a general rule, stipulations may not be withdrawn without the consent of both parties, or for cause. Typically, the grounds for setting aside a stipulation include fraud, mistake, undue influence, or grounds of a similar nature. *See* 83 C.J.S. *Stipulation* §§ 30, 35 (1953). It is not a ground for relief that the stipulation was disadvantageous to the party seeking relief. *Id.*

This court in *Gilbert v. Lusk* (1952), 123 Ind.App. 167, 106 N.E.2d 404, recognized that a party should not be allowed to withdraw a stipulation absent fraud or mistake. Reviewing Hal's motion to set aside the stipulation, no grounds other than "new evidence" were asserted to support the motion. This amounts to little more than a claim that the stipulation is disadvantageous to Hal, as Hal is precluded from attempting to disprove the stipulated value of the marital residence. *Schreiber v. Rickert* (1943), 114 Ind.App. 55, 50 N.E.2d 879.

The trial court was bound by the stipulated value of the marital residence, and it erred by determining its value was different than the stipulated value.

ISSUE THREE—Did the trial court err when it interpreted the parties' ante-nuptial agreement?

PARTIES' CONTENTIONS—Hal argues that the trial court erred when it determined a provision of the parties' ante-nuptial agreement had no effect, claiming the trial court misinterpreted the provision's meaning. Joyce asserts the trial court properly applied the terms of the agreement.

CONCLUSION—The trial court did not err.

The ante-nuptial agreement provided, in pertinent part:

"Hal and Joyce covenant and agree that Joyce shall have no right, claim, title, or benefit, as it relates to Harlan Industries, Inc., its subsidiaries and affiliates during the lives of either or both such parties for a period of five (5) years from this date, except as either or both shall hereafter expressly provide by a valid Last Will and Testament in effect and subject to probate at the time of their respective deaths."

*Record* at 24.

The trial court concluded that because five years had passed, this provision was no longer effective. *Record* at 81. Antenuptial agreements are to be con-

strued according to the general principles applicable to the construction of ordinary contract provisions. *Rose v. Rose* (1988), Ind.App., 526 N.E.2d 231.

The unambiguous language of the contract is conclusive upon the parties to the contract and upon the courts, and it is within the discretion of the trial court to determine if the provision is ambiguous. *Rose, supra.*

The contract language unmistakably states that Joyce would have no claim related to HSD for a period of five years from the date of the marriage. This is further supported by the fact the five year limitation was added to the contract, which originally contained no limitation. *Record* at 24.

The judgment is reversed as to the distribution of marital property, and this cause is remanded for further proceedings consistent herewith, including a new trial as to division and distribution of marital property, if necessary.[2]

SULLIVAN, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent from the majority's determination that the trial court abused its discretion when it subtracted potential tax liability from the value of HSD. By considering the tax consequences which would be incurred if Hal was required to sell his shares of HSD stock, the trial court was properly following the dictates of IND. CODE § 31–1–11.5–11.1 (1988 Ed.).

The majority construes IND.CODE § 31–1–11.5–11.1 as an endorsement of the common law existing at the time of its enactment. The common law respecting inclusion of tax liability in the valuation of the marital estate grew out of three cases: *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240; *In re Marriage of Mulvihill* (1984), Ind.App., 471 N.E.2d 10; and *Burkhart v. Burkhart* (1976), 169 Ind.App. 588, 349 N.E.2d 707. From those cases, an approach developed whereby a trial court

could consider tax liability if (1) the property disposition involved a mandatory transfer of assets or (2) the realization of tax consequences was inevitable regardless of the structuring of the property disposition. In all other instances, tax liability would be deemed a speculative and inappropriate consideration.

When it enacted IND.CODE § 31–1–11.5–11.1, the legislature was cognizant of this Court's position concerning the inclusion of tax liability in the valuation of marital assets. It is unlikely that the legislature merely sought to express its approval of this Court's rationale when the statute was adopted. IND.CODE § 31–1–11.5–11.1 is more reasonably construed as an attempt to effectuate a change in the common law.

The statute contains no limiting language, but provides that "[t]he court, in determining what is just and reasonable in dividing property ..., *shall* consider the tax consequences of the property disposition...." [Emphasis added.] *Id.* In accordance with that statute, the lower court in the instant case took into account the tax consequences of selling stock in HSD. The fact that a transfer of stock was not mandated by the property disposition is no longer a relevant consideration. Moreover, the tax liability discerned by the trial court is no more speculative than the majority's assumption that Hal's income will remain at a level which will permit him to pay $2,373.12 per month without selling stock.

For the foregoing reasons, I dissent.

---

2. We recognize a different trial judge must necessarily hear this case on remand.