**Suzann S. GRANGER, Appellant–Respondent,**

v.

**Fred L. GRANGER, Appellee–Petitioner.**

**No. 29A02–9012–CV–764.**

Court of Appeals of Indiana, Second District.

Oct. 21, 1991.

Raymond M. Adler, Noblesville, for appellant-respondent.

Deborah L. Farmer, Noblesville, for appellee-petitioner.

SHIELDS, Judge.

Suzann S. Granger appeals the trial court's judgment dividing the marital estate of her marriage to Fred L. Granger.

We reverse.

## ISSUE

Whether the trial court erred in deducting a possible tax liability arising from the sale of marital assets when determining the net value of the marital estate.

## FACTS

After filing a petition for dissolution, Fred listed two laundromats he owned for sale. The marital assets, including the laundromats, were valued at $340,293.52;[1] the parties' liabilities totalled $99,407.67. The trial court determined the anticipated tax liability from the sale of the laundromats would be $53,200.00 and reduced the marital estate by that amount. Thus, the net marital estate was valued at $187,-685.85 which the trial court divided equally between Fred and Suzann. As part of its decree, the trial court awarded Suzann the marital residence and a Ford Taurus automobile and ordered Fred to "pay and satisfy in full from the proceeds of the sale of the first laundromat the second mortgage and the Ford Taurus loan." Record at 15. In addition, Fred was ordered to pay a $6,168.23 judgment to Suzann "on the earliest of the closing on the first laundromat sold or 180 days from the date of this decree." Record at 15.

Suzann appeals.

## DISCUSSION

██ The division of marital property is committed to the sound discretion of the trial court subject to the rebuttable presumption of an equal division. IC 31-1-11.5-11(c) (1988). Pursuant to IC 31-1-11.5-11.1 (1988), the trial court must consider the tax consequences of the property distribution with respect to the present and future economic circumstances of each party in a dissolution action. However, only tax consequences necessarily arising from the plan of distribution are to be taken into account. *Harlan v. Harlan* (1989), Ind. App., 544 N.E.2d 553, 555, *aff'd,* (1990), Ind., 560 N.E.2d 1246. Accordingly, in *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315 this court reversed the trial court's judgment insofar as it ordered the

---

**1.** The laundromats were valued at $190,000. According to the trial court's judgment, it considered a ten percent (10%) sales commission "in the assessment of the values assigned to the laundromats as the values used are the anticipated proceeds of sale after reduction for sales commission." Record at 13.

marital estate reduced by income taxes arising upon the future sale of stock awarded to one spouse because "only the immediate tax consequences of the property disposition may be considered." *De-Haan*, 572 N.E.2d at 1327. A taxable event must occur as a direct result of the court-ordered disposition of the marital estate for the resulting tax to reduce the value of the marital estate.[2]

■ Thus, Suzann correctly argues the trial court erred in reducing the marital estate by $53,200.00, the amount the trial court considered as the anticipated tax liability from the possible and future sale of the laundromats, because the laundromats were not ordered sold by the trial court in the property disposition.

The trial court explained its consideration of the possible tax liabilities from the sale of the laundromats at the hearing on Suzann's motion to correct errors. The trial court stated although it did not "specifically order the sale of the laundromats," there is no other way "under the circumstances, where [Fred] can accomplish the things that have been required by this Court without the sale of the laundromats." Record at 153–154.

The record is totally devoid of any evidence to support this determination. Fred testified he offered the laundromats for sale in order to raise cash to pay his legal expenses, his moving expenses (including moving and packing costs and security and utility deposits) estimated at $1,008.50, business personal property taxes of $4,700.00, and any judgment awarded to Suzann. In the judgment, Fred is ordered

to pay debts in the amount of $49,117.37.[3] In addition, the trial court ordered Fred to pay Suzann the sum of $6,168.23 no later than 180 days from the decree. However, the laundromats are valued at $110,000.00 and $80,000.00 and carry an indebtedness of less than $19,000.00 including personal property taxes which are payable from income generated by the business. Most, if not all, of the personal indebtedness is payable in monthly installments.[4] The trial court calculated Fred's income generating capacity as $30,000.00 per year. The reasonable inference is that Fred could borrow the necessary funds to meet his obligations under the property division should the business gross or Fred's income be insufficient.[5]

The record does not establish the sale of both laundromats was an immediate consequence of the property disposition. Therefore, the trial court erred in considering the possible tax liability from the sale of both laundromats when assessing the net value of the marital estate. We must reverse the judgment of the trial court relative to the division of the marital estate and remand with instructions to reconsider its judgment in a manner not inconsistent with this opinion.

Judgment relative to the division of the marital estate is reversed; in all other matters the judgment is affirmed.

SULLIVAN, and CONOVER, JJ., concur.

2. Of course, the trial court's judgment might provide alternative plans of distribution, one which appropriately considers resulting tax consequences and one which does not involve tax consequences.

3. These debts included a second mortgage in the amount of $25,081.49, the debt of $1,877.70 on the vehicle awarded Fred, a debt of $2,716.80 on the vehicle awarded Suzann, a debt to Dr. Barbour of $1,577.00, department stores debts in the amount of $2,537.31, his dental bill of $1,460.00, and business debts of $13,867.07. The record is not clear whether the business debts were considered in assessing the value of the laundromats. The trial court ordered Fred to pay the second mortgage and Suzann's automobile loan

from the proceeds of the sale of the first laundromat.

4. The trial court's judgment orders Fred to pay the second mortgage and Suzann's vehicle indebtedness in full only from the proceeds of the sale of the first laundromat. Therefore, until and unless such a sale occurs, Fred is responsible for the indebtedness only as it becomes due under the obligation, presumably monthly.

5. Kenneth Cookerly, a business broker, testified only that "banks customarily [do not] finance laundromats like they do residences." Record at 37. He advised "if there is to be any kind of financing, it is a seller financed deal on a contract sale or something like that." *Id.*