**Barbara T. BERGER, Appellant**
**(Petitioner Below),**

v.

**Richard L. BERGER, Appellee**
**(Respondent Below).**

No. 49A04–9406–CV–253.

Court of Appeals of Indiana,
Fourth District.

March 22, 1995.

Audrey K. Grossman, Treacy Grossman & Sullivan, Indianapolis, for appellant.

David Backer, Backer & Backer, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

The marriage of Barbara T. Berger (Wife) and Richard L. Berger (Husband) was dissolved on February 18, 1994. Wife appeals the trial court's division of the marital estate.

We affirm in part and remand in part.

### *ISSUES*

1. Whether the trial court erred in not awarding Wife all of the money she inherited and the money she received as a gift.
2. Whether the trial court erred by failing to specifically order Husband to pay Wife $5,000.00.
3. Whether the trial court erred by failing to include in the marital estate future payments to Husband in consideration for Husband's agreement not to compete with the buyer of his dental practice.

### *FACTS*

Husband and Wife were married on July 4, 1954. At the time of their divorce, they had been married thirty nine years, and were each sixty years old. They have four emancipated children.

Wife has been employed as an art teacher for twenty-three years and has no plans to retire. Husband's parents were both den-

tists, and he joined their practice in 1959. In 1976, Husband's parents gave him the practice. Although neither Husband nor Wife could assign a value to the practice as of the time it was given to him, Husband testified that he made more money from his practice during the seventies than he had in recent years. Husband attributed this situation to the changing nature of insurance reimbursement, the increasing number of dentists, and escalating costs.

In 1983, Wife received a gift of $87,000.00 from her parents. When Wife's Mother died in the late 1980's, she left Wife $350,000.00. The gift and inheritance money was placed in joint accounts. Throughout the marriage, Wife showed little, if any, interest in the couple's financial affairs. Instead, she trusted Husband to manage the marital finances.

Prior to their separation, Husband decided to sell his dental practice. The sale was arranged by AFTCO, a company that specializes in the purchase and sale of professional practices, and will be formally closed on April 14, 1995. Buyer will pay Husband a total price of $235,000.00 for the assets of the practice and for Husband's covenant not to compete. Of this sum, Husband owes AFTCO a $21,000.00 broker fee.

At the final hearing, Wife introduced Joint Exhibit # 1 which is a valuation list of the couple's assets and liabilities. Wife placed a value of $213,400.00 on Husband's dental practice (total practice price minus broker fee), while Husband valued the practice at approximately $96,000.00 ($105,750.00 for the assets minus a percentage of the broker fee). The value of the practice was the only valuation Husband and Wife disagreed upon. Thus, Wife valued the net marital estate at $1,316,286.00, while Husband claimed the net marital estate had a value of $1,198,916.00. In its dissolution decree, the trial court distributed the couple's property, giving Husband his dental practice, and concluded as follows:

> The Court finds that the 50–50 presumption has been rebutted due to the acquisition of property through Wife's receipt of inheritance and gift during the course of the marriage. The Court therefore finds that the division of the net marital estate after apportionment of debt is as follows: Wife—54%; Husband—46%.

R. at 89. The trial court did not enter findings of fact and conclusions of law.[1]

## DECISION

### I. GIFT AND INHERITANCE FUNDS

In order to arrive at the 54%/46% division of the marital estate, Wife assumes the trial court included Husband's valuation of his dental practice, as opposed to Wife's.[2] Wife then concludes that "Husband was awarded 50% of the jointly acquired property, all of the property acquired by him as gift [the dental practice] and 28% of the property acquired by Wife through gift or inheritance." Appellant's brief at 20.

Wife concedes the $87,000.00 she received as a gift and the $350,000.00 she inherited were placed in joint accounts and were, in part, commingled with marital funds. She also acknowledges that she benefitted from the use of the funds, and that Husband's investments increased the value of a portion of the funds. Furthermore, Wife essentially concedes that, true to the trial court's conclusion that Wife rebutted the statutory presumption of a 50/50 split of the marital estate by introducing evidence of money acquired by gift and inheritance, the trial court award-

---

1. Wife initially asked the trial judge to enter findings of fact and conclusions of law. However, when the judge explained such a request would significantly delay the issuance of a final order, Wife withdrew her request. Thus, the trial court's dissolution decree merely distributes the couple's property. It does not assign value to any specific asset, nor does it state total distribution value.

2. As noted, the trial court awarded Husband's dental practice to him. Thus, Wife contends, had her $213,400.00 valuation of the practice been utilized, as opposed to Husband's $96,000.00 valuation, Wife would have received 49% of the marital estate, while Husband would have received 51%. Because the trial court specifically found that Wife should receive 54% of the marital estate, Wife contends "it must be concluded that the court accepted Husband's value of [the dental practice]." Appellant's brief at 13.

ed her a larger portion of these funds than it awarded to husband.[3]

However, Wife points out that she received the $87,000.00 when the couple had been married for 29 years, and that she inherited the $350,000.00 when the marriage was 35 years old. Wife testified that she trusted Husband and thought the marriage would last until death. Wife claims she should not have been expected to segregate the money because she never anticipated Husband would "move in with his 32–year old dental hygienist." R. at 133; Appellant's brief at 20. Thus, she claims, the trial court gave "little weight" to the fact that she acquired the money through both gift and inheritance, which "denigrates the concept of marriage." Appellant's brief at 21. Essentially, Wife contends the trial court should have "awarded each party 50 percent of the jointly acquired property and all of the property acquired by each through inheritance or gift, the distribution would be approximately $777,000 to Wife and $429,000 to Husband, or 64 percent to Wife and 36 percent to Husband." Appellant's brief at 19.

We first note that Wife failed to cite to any cases or relevant authority in support of her contention. Her failure to comply with Ind.Appellate Rule 8.3(A)(7) constitutes waiver of this issue for appellate review. *Johnson v. Sprague* (1993), Ind. App., 614 N.E.2d 585, 588. Waiver notwithstanding, subject to the statutory presumption that an even distribution of marital property is just and reasonable, the disposition of marital assets is committed to the sound discretion of the trial court. *Truman v. Truman* (1994), Ind.App., 642 N.E.2d 230, 234. In the exercise of that discretion, the trial court may divide the marital property unequally provided the court sets forth its reasons for so doing. *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554, 556. We consider only that evidence most favorable to the trial court's disposition of the property. *Truman, supra.* Moreover, we will presume that the trial court acted properly in dividing marital property, and will reverse a trial court only

where the result reached is clearly against the logic and effect of the circumstances before the court. *Id.*

Here, the trial court explained that Wife would receive 54% of the marital property, while Husband would receive 46%, because Wife presented evidence that she acquired property through gift and inheritance, thereby rebutting the statutory presumption of a 50/50 split of the marital estate. Given the fact that the gift and inheritance money was commingled with other marital funds, that Wife admitted to benefiting from the use of the funds, and that Husband's efforts increased the value of a portion of the money, we cannot say the trial court's property division is against the logic and effect of the circumstances before the court. Accordingly, despite Wife's invitation to reweigh the evidence more heavily in her favor, we will not invade the province of the trial court's discretion.

## II. $5,000.00

At the time of the couple's separation, but before the petition of dissolution was filed, Husband withdrew $10,000.00 from a jointly held account and told Wife he would pay her back in full with interest. Although Husband conceded making that promise, he nevertheless requested the trial court to award Wife only $5,000.00. In its final decree, the trial court did not specifically direct Husband to pay Wife the $5,000.00, and Wife now claims the trial court's failure to do so amounts to an abuse of discretion.

Initially, we note that Wife has again failed to cite any authority in support of her proposition thereby waiving appellate review of this issue. *Johnson, supra.* In any case, we consider the trial court's disposition of property as a whole, not item by item. *Euler, supra.* The trial court specifically found that neither Husband nor Wife dissipated the marital assets, R. at 84, and there is no indication the trial court failed to account for the $5,000.00 award to Wife in its overall distribution scheme.[4] We cannot say the trial court abused its discretion.

3. *See* Ind.Code 11–1–11.5–11(c).

4. For example, Husband points out that he made mortgage payments on the marital residence in

## III. RESTRICTIVE COVENANT

At the hearing, Husband testified that well before he and Wife separated, he decided to investigate selling his dental practice. He was contacted by AFTCO which appraised Husband's practice, established the value for both the practice assets and for the restrictive covenant, and located a buyer. No negotiations took place between Husband and Buyer, and AFTCO prepared the paperwork. The sale agreement consists of several distinct contracts. The "Provider Agreement" provides that after the April 1995, closing date, Husband will be entitled to practice in the office two days a week for a period of three years, and will be compensated for his work. After that time, Buyer will have the option to allow Husband to remain.

The "Asset Purchase Agreement" provides for the sale of the practice assets for the sum of $105,750.00. The dental practice assets identified are, in part, the equipment, office furniture, office and clinical supplies, patient records, and miscellaneous assets which are defined as:

> The telephone number of the Practice and any related yellow page ads, the assignment of the office lease for the Premises (if transferred), a list of all the current suppliers of the Practice, *the goodwill of the Practice (if any)*, and all other miscellaneous tangible and intangible non-cash assets of the Practice. . . .

R. at 253 (emphasis added).

Under the "Restrictive Covenant Agreement," Husband agreed to refrain from practicing dentistry within a seven-mile radius of his former practice for a period of three years from the date he last practices in that office. As consideration for this agreement, Buyer agreed to pay Husband $129,250.00.

As noted, the gross price to be paid by Buyer for *both* the restrictive covenant and the assets is $235,000.00. On the April 1995, closing date, Buyer is to pay Husband a down payment of $50,000.00, from which Husband will pay AFTCO a $21,600.00 bro-

ker fee. The $185,000.00 balance is evidenced by a promissory note. Buyer is to make one combined payment for both the sale of the assets and the restrictive covenant each month for one hundred twenty months commencing in May 1995.

Despite the fact the trial court merely listed the couple's property without assigning value in its final decree, it is apparent the trial court excluded the proceeds of the restrictive covenant from the marital pot in arriving at the 54%/46% split of the marital estate. *See* note 2, *supra*. In other words, the trial court accepted Husband's net $96,-000.00 valuation of the dental practice, which excluded the value of the restrictive covenant, as opposed to Wife's net $213,000.00 valuation, which included both the sale of the assets and the restrictive covenant.

■ Wife argues that in so doing, the trial court abused its discretion; and she further claims her valuation of Husband's practice to be "the proper value" because denominating a portion of the purchase price as a restrictive covenant "is a sham." Appellant's brief at 13. Instead, she contends, the restrictive covenant actually represents the sale of the goodwill of the dental practice, which should be included in the marital estate. On the other hand, Husband asserts that the portion of the monthly payments which are attributable to the restrictive covenant are not marital property because they constitute future income.

■ The trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Cleary v. Cleary* (1991), Ind.App., 582 N.E.2d 851, 853. The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support the result. *Id.* A reviewing court will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id.*

the amount of $6,349.00 between the couple's date of separation and the final hearing. The trial court awarded the marital residence and the accompanying mortgage to Wife. R. at 325. Thus, as Husband posits, the trial court may

easily have determined the "$6,349.00 benefit to Wife more than offset the $5,000.00 that Wife now claims should be paid to her." Appellee's brief at 25.

We agree that the trial court may not divide the future earnings of a party in anticipation that they will be earned. *Leisure v. Leisure* (1993), Ind., 605 N.E.2d 755, 759. *See also Wilcox v. Wilcox* (1977), 173 Ind.App. 661, 365 N.E.2d 792 (future salary not marital "property" subject to division). However, it is also true that the goodwill value of a professional's practice may be included in the marital estate for purposes of property distribution pursuant to a dissolution decree. *Porter v. Porter* (1988), Ind. App., 526 N.E.2d 219, 225, *reh'g denied, trans. denied; See also Cleary, supra.*

*Black's Law Dictionary* 694 (6th ed. 1990) defines the term "goodwill" as follows:

The custom of patronage of any established trade or business; the benefit or advantage of having established a business and secured its patronage by the public. And as property incident to business sold, favor vendor has won from the public, and probability that all customers will continue their patronage. It means every positive advantage that has been acquired by a proprietor in carrying on his business, whether connected with the premises in which the business is conducted, or with the name under which it is managed, or with any other matter carrying with it the benefit of the business.

*The excess of an acquired firm or operating unit over the current or fair market value of net assets of the acquired unit.* Informally used to indicate the value of good customer relations, high employee morale, a well-respected business name, etc. which are expected to result in greater than normal earning power.

(Emphasis added).

In essence, the term "goodwill" has been defined by this court as the probability that old customers of the firm will resort to the old place of business where it is well-established, well-known, and enjoys the fixed and favorable consideration of its customers. *Lawlis v. Kightlinger & Gray* (1990), Ind. App., 562 N.E.2d 435, 442, *reh'g denied, trans. denied.* More succinctly stated, goodwill is the expectation of continued public patronage. *Cleary, supra.*

Furthermore, goodwill is the protectable interest upon which the restrictive covenant ancillary to the sale of a business focuses, *McCart v. H & R Block, Inc.* (1984), Ind.App., 470 N.E.2d 756, 763, *reh'g denied, trans. denied; Young v. Van Zandt* (1983), Ind.App., 449 N.E.2d 300, 304; *Donahue v. Permacel Tape Corporation* (1955), 234 Ind. 398, 127 N.E.2d 235, 238, because the covenant reflects the value of the customer's affiliation with the particular business, which is part of the bargain sought by buyer. *McCart, supra.* The goodwill of a business is an intangible asset which may be transferred from seller to purchaser, and it becomes the buyer's right to expect the business' established customers will continue to patronize the purchased business. *Fogle v. Shah* (1989), Ind.App., 539 N.E.2d 500, 502. The seller reentering the market and competing with buyer for customers precludes buyer from receiving all that has been sold to him. *McCart, supra.*

In the absence of findings of fact and conclusions of law, we are unable to conclusively determine that the trial court excluded the proceeds of the restrictive covenant from the marital pot because it constitutes Husband's future income. Thus, while we acknowledge the purchase agreement for the sale of the practice assets specifically includes the "goodwill" of the practice, Indiana law has long held a restrictive covenant ancillary to the sale of a business represents the sale of the goodwill of that business, and the facts before us appear to support that principle.

Husband's practice is situated in Beech Grove, a small community within the suburbs of Indianapolis. Given that Husband's parents owned the practice before he joined them and that Husband has practiced in Beech Grove for thirty-six years, it is reasonable to infer the dental practice enjoys substantial goodwill within the Beech Grove area. Clearly this goodwill represents a valuable commodity to Buyer as Husband will continue practicing with Buyer two days a week for a period of three years, thus ensuring the continuance of Husband's goodwill and facilitating a smooth transition upon Husband's retirement. During this three-

year period, Husband will be compensated for his work and will additionally receive the restrictive covenant payments. Should Husband die before all payments have been made, Buyer is to pay Husband's estate the balance. Furthermore, Husband testified that he has no plans to practice dentistry at any location after his three-year "employment" period ends.

Thus, the facts before us suggest that at least a portion of the proceeds of the restrictive covenant are intended to be compensation for the goodwill of Husband's dental practice, as opposed to compensation for Husband's agreement to forego a future salary earned from practicing dentistry in the Beech Grove community. Accordingly, we remand for a determination of that percentage of the restrictive covenant, less the broker fee, which is attributable to the goodwill of Husband's dental practice and that percentage, if any, which is attributable to Husband's future income. That portion of the restrictive covenant which is in the nature of compensation for the goodwill of husband's practice should be included in the marital estate for distribution.

Affirmed in part and remanded in part for further proceedings consistent with this opinion.

SHARPNACK, C.J., and RILEY, J., concur.