**In re the Marriage of Diane L. HISER, Appellant–Respondent,**

**v.**

**Harold E. HISER, Appellee–Petitioner.**

**No. 54A05–9603–CV–100.**

Court of Appeals of Indiana.

March 16, 1998.

Molly P. Rucker, Mark A. Glazier, Steven F. Fillenwarth, Rucker Glazier & Fillenwarth, Indianapolis, for Appellant–Respondent.

Robert E. Stewart, Danville, for Appellee–Petitioner.

## OPINION

SHARPNACK, Chief Judge.

Diane Hiser appeals the trial court's judgment dividing the marital estate from her marriage to Harold Hiser. The sole issue for our review is whether the trial court erroneously considered the tax consequences in assessing the value of certain stock options. We affirm.

The facts most favorable to the judgment follow. On June 2, 1993, Harold filed a petition for dissolution of the marriage. Between April of 1994 and March of 1995, during the pendency of the dissolution action, Harold exercised 9000 stock options awarded to him by his employer, National City Bank.[1] As a result, prior to the trial court's final divorce decree, Harold sold the stock resulting in a profit of $147,540. Taxes on these proceeds were withheld at the rate of approximately 35% which totaled $53,490.

In the original dissolution decree entered on November 16, 1995, the trial court valued the options, as of the date of filing, at $116,977 without an allowance for the taxes paid. In response to Harold's first and second motions to correct error, the trial court recalculated the value of the stock by subtracting taxes paid by Harold. Diane now appeals the trial court's reduction of the value of the stock options by considering the taxes paid at the time of sale.

■ The sole issue for our review is whether the trial court erroneously valued the stock options by considering the taxes paid by Harold when he exercised the options during the pendency of the dissolution

---

1. Diane implies in her argument that Harold's unilateral exercise of the stock options was improper. She also asserts that the trial court should have taken into consideration the fact that Harold exercised the stock options that had a tax liability rather than the tax-free options he held. However, she neither develops these arguments nor cites any authority in support of her position. Therefore, she has waived review of these issues. See Ind. Appellate Rule 8.3(A)(7); Berger v. Berger, 648 N.E.2d 378, 381 (Ind.Ct.App.1995).

action. Indiana Code § 31–15–7–7 [2] provides for consideration of the tax consequences of a trial court's property distribution as follows:

> "The court, in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party."

In applying this statute, we have held that only tax consequences necessarily arising from the plan of distribution are to be taken into account. *Harlan v. Harlan*, 544 N.E.2d 553, 555 (Ind.Ct.App.1989), *reh'g denied, aff'd* 560 N.E.2d 1246 (Ind.1990). Accordingly, in *DeHaan v. DeHaan*, we held that the trial court erroneously ordered the marital estate reduced by taxes arising from a future sale of stock awarded to one spouse because "only the immediate tax consequences of the property disposition may be considered." *De-Haan v. DeHaan*, 572 N.E.2d 1315, 1327 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* We have further held that "[a] taxable event must occur as a direct result of the court-ordered disposition of the marital estate for the resulting tax to reduce the value of the marital estate." *Granger v. Granger*, 579 N.E.2d 1319, 1321 (Ind.Ct.App.1991), *trans. denied.*

Based on the holdings of these cases, Diane argues that because the trial court did not order the stock options to be exercised and the stock sold, the taxes incurred by Harold were not an immediate consequence of the trial court's disposition order. Thus, she asserts that the trial court erroneously deducted the taxes paid from the proceeds of the sale, thereby reducing the marital pot. We disagree.

*Harlan, DeHaan,* and *Granger* are distinguishable from the facts before us in that the tax consequences in dispute in those cases involved taxes which might result from a future disposition of the property. Here, the trial court was faced with an actual sale of the stock and actual taxes paid. The trial court had to consider the consequences of the sale of the stock because the amount paid in taxes was no longer part of the marital pot upon the trial court's final disposition of the property. Therefore, the payment of taxes reduced the value of the marital pot to be disposed of by the trial court.

In *Harlan,* we noted that "[t]he clear inference [in the statute] is that *only* tax consequences necessarily arising from the plan of distribution are to be taken into account, not speculative possibilities." *Harlan,* 544 N.E.2d at 555 (original emphasis). These taxes, having been already paid, were in no way speculative, and are, in fact, inherently tied to the value of the proceeds received from the sale. Thus, the circumstances before us do not fall within the scope of the rule that potential future tax consequences of property are not to be considered by the trial court in valuation of an asset.[3]

▮ Having held that these cases are not applicable to the facts before us, we are now left to apply the general standard for review of the trial court's valuation of marital property. The trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Cleary v. Cleary,* 582 N.E.2d 851, 852 (Ind.Ct.App.1991). The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support the result. *Id.* In other words, we will not reverse the trial court unless the decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* Further, a trial court has broad discretion in determining the date upon which to value marital assets. *Staller v. Staller,* 570 N.E.2d

---

**2.** During the pendency of this appeal, the original section cited by the parties, I.C. § 31–1–11.5–11.1, was repealed and replaced with this section. However, the contents of the new statute are identical to the version cited by the parties.

**3.** Diane also asserts that if it was proper for the trial court to consider the tax consequences of the stock options sold by Harold, then it should have also considered the tax consequences of an eventual exercise of the stock options awarded to her by the trial court. However, Diane had neither exercised nor sold any of this stock prior to the final disposition. Thus, any tax consequences she urges that the trial court should consider would be "speculative" and, as such, create the very circumstance that falls squarely within the case law discussed above. *See Granger,* 579 N.E.2d at 1319.

1328, 1331 (Ind.Ct.App.1991). For purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Id.*

In valuing the stock options, the trial court chose the date of filing as the date of valuation and calculated that the options, if exercised and sold on that date, would yield a profit of $116,977 without a deduction for taxes. After considering Harold's two motions to correct error, the trial court agreed with Harold's assertion that because he had sold the stock during the pendency of the action, he should receive a credit for the taxes he paid through a reduction in the marital pot. Because the trial court has the discretion to value property at any date between the date of filing and the date of the final hearing, we do not find that it was an abuse of discretion for the trial court to reduce the value of the stock by the taxes paid on a sale that occurred within that same time period. *See id.*

■ Diane also asserts that the evidence does not support the trial court's determination that the tax rate for the sale of the stock was 35%.[4] She maintains that the 35% withheld is much greater than the overall tax rate of approximately 20% that Harold has paid in past years. However, the trial court, in determining the amount of taxes paid, was not determining what the overall tax rate was for all income in that year, but what the tax rate was for the sale of the stocks. Evidence was presented that Harold withheld 35% of the proceeds for payment of taxes. This included a 28% federal withholding in addition to withholdings for state, local and FICA.

We further note that while the trial court did allow Harold a credit for the taxes he paid on the sale, he was only allowed a credit for the amount of taxes he would have paid had he sold the stock on the date of filing. Because Harold sold the stocks for significantly more than the date of filing value, the taxes he actually paid were approximately

$13,000 more than the amount for which the trial court allowed him a credit. As such, the credit he was allowed was effectively much lower than the 35% actually paid. Therefore, we conclude that the trial court did not abuse its discretion in calculating the tax at a rate of 35% on the value of the stock at the date of filing. *See Cleary,* 582 N.E.2d at 852.

For the foregoing reasons we affirm the judgment of the trial court. Affirmed.

KIRSCH, J., concurs.

BARTEAU, J., dissents with opinion.

BARTEAU, Judge, dissenting.

I disagree with the majority's view that the holdings of *Harlan, DeHaan,* and *Granger* are limited to situations involving only purely "speculative" tax consequences; rather, I believe those decisions are directly applicable to tax consequences of transactions like the one before us here, which do not in any way "necessarily aris[e] from the plan of distribution." For that reason, I believe the trial court abused its discretion in considering the tax consequences of these sales of options, which sales were made without participation by Diane or the Court, and I must dissent.

In *Harlan,* we explained for the first time the effect of Ind.Code § 31–1–11.5–11.1. We emphasized that the statute requires trial courts to "consider the tax consequences *of the property distribution.*" 544 N.E.2d at 555 (emphasis in original). We looked for guidance to our decisions prior to the enactment of the statute, noting that in a number of those decisions, the trial courts had properly concluded that *"because the property disposition did not require the liquidation of any assets which would result in a tax liability,* a reduction of the value of the marital estate due to a speculative tax liability was unwarranted." *Id.* (emphasis supplied). We saw the statute as an "affirmation of the rationale" of those decisions. *Id.*

---

**4.** Diane argues in passing that the trial court also failed to give her credit for a tax refund that she and Harold shared in 1994 with respect to valuation of the options. However, she fails to develop a cogent argument and fails to cite authority with respect to this position. Therefore, she has waived review of this issue. *See* App. R. 8.3(A)(7); *Berger,* 648 N.E.2d at 381.

The majority correctly notes that Harold incurred real, and not speculative tax consequences. However, those tax consequences were a result of Harold's unilateral decision to sell the options during the pendency of the dissolution proceedings, and were not "tax consequences of the property disposition," Ind.Code § 31–1–11.5–11.1. Thus, they should not have been considered by the trial court.

In *Granger*, we explained that a "taxable event must occur *as a direct result of the court-ordered disposition of the marital estate* for the resulting tax to reduce the value of the marital estate." 579 N.E.2d at 1321 (emphasis supplied). There, the husband owned two Laundromats which he put up for sale after he filed for dissolution. Based on the valuation of the Laundromats, the trial court determined the anticipated tax liability from the sale, and reduced the marital estate by that amount. We reversed, not because of the speculative nature of the tax liability, but because the Laundromats had not been ordered sold as part of the parties' property distribution. Because the sale was not ordered by the court, we determined that the "record does not establish the sale of both Laundromats was an immediate consequence of the property disposition." 579 N.E.2d at 1321.

Similarly, the "taxable event" here—Harold's sale of the stock options after the petition for dissolution had been filed—was not ordered by the court as part of the Hisers' property distribution. Because there was no "court-ordered disposition" of that portion of the marital estate, the taxes incurred could not have been an "immediate consequence of the property distribution" as contemplated by the statute and our holding in *Granger*.

I believe the statute, as explained by our decisions, imposes two requirements for trial court consideration of tax consequences of a marital property disposition. First, there must be an actual, and not purely speculative, "tax consequence." *See, e.g., DeHaan*, 572 N.E.2d at 1327, where we noted that the wife's tax liability was only "potential" and "remote" because it depended on a future disposition of stock and "is not a direct con-

sequence of the property disposition itself." Second, the tax consequence must be a consequence *of the property disposition*—for example, a result of a court-ordered disposition of part of the marital estate as part of a marital property distribution. *See, e.g., Granger*, 579 N.E.2d at 1321.

Because the second requirement of the statute was not satisfied in this case, the trial court abused its discretion in considering the tax consequences of Harold's unilateral decision to sell the options and in reducing the marital estate accordingly. I would reverse.