## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**
Jul 28 2015, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Laurie Baiden Bumb
Bumb & Vowels, LLP
Evansville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Marriage of: | July 28, 2015 |
| Thomas E. Thompson, | Court of Appeals Case No. 74A05-1412-DR-598 |
| *Appellant-Respondent,* | Appeal from the Spencer Circuit Court |
| v. | The Honorable Jonathan A. Dartt, Judge |
| Donna B. Thompson, | Cause No. 74C01-0801-DR-34 |
| *Appellee-Petitioner,* | |

**Bradford, Judge.**

# Case Summary

[1] Appellee-Petitioner Donna Thompson ("Wife") filed for dissolution of marriage from her former husband, Appellant-Respondent Thomas Thompson ("Husband"). In separating the marital assets, the trial court awarded Husband

the marital home and Husband's 401(k) which accounted for the large majority of the total marital estate. The trial court also ordered Husband to make a cash equalization payment to Wife in order that the total assets would be split evenly by the parties. The trial court instructed Husband to liquidate certain retirement accounts, refinance the marital home, or obtain a loan to satisfy the cash payment to Wife. The trial court further instructed that if such options were insufficient, Husband would be required to sell the marital home. On appeal, Husband argues that the trial court erred by failing to consider tax consequences and costs of selling the home when valuating assets, resulting in an unequal division of property. We agree and remand with instructions that the trial court revaluate certain assets to account for the tax consequences and costs of real estate sale that will likely be incurred as a result of the order.

## Facts and Procedural History

[2] The parties were married on December 21, 1984 and have three adult children together. On January 16, 2008, Wife filed a petition for dissolution of marriage. On March 1, 2012, Husband retired from his job of twenty-three years. The trial court held a hearing on February 11, 2014 regarding the division of the marital estate. Among other assets, Husband had two pensions which Wife requested be split by means of a Qualified Domestic Relations Order ("QDRO"). In its June 26, 2014 decree of dissolution and property division, the trial court ordered the marital assets separated as follows:

2. The Petitioner/Wife shall receive and own as her property the following property at the following values:

| | |
|---|---|
| Half of Husband's Millwright Pension that accrued during marriage | QDRO |
| Half of Husband's ALCOA Defined Benefit (Pension) that accrued during marriage | QDRO |
| 2002 Pontiac Grand Am | $1,200 |
| 2006 Chevy Aveo | $8,000 |
| Ed Jones joint [account] | $23,096 |
| Wife's Freedom [account] | $0.32 |
| Wife's American Funds IRA | $57,871.41 |
| Wife's SMMC 401(a) | $1,024.56 |
| Wife's SMMC 403(a) | $2,038.53 |
| Personal Property (equal value to Husband's) | ----------- |
| TOTAL | $90,231.00 |

3. The Respondent/Husband shall receive and own as [his] property the following property at the following values:

| | |
|---|---|
| Half of Husband's Millwright Pension that accrued during marriage | QDRO |
| Half of Husband's ALCOA Defined Benefit (Pension) that accrued during marriage | QDRO |
| Marital home & real estate [] | $97,000.00 |
| 1984 Chevy Blazer | $500.00 |
| Husband's Freedom [account] | $3,600.38 |
| Husband's ALCOA 401(k) Defined Contribution Plan | $226,231.37 |
| Personal Property (equal value to [Wife's]) | ----------- |
| TOTAL | $406,901.50 |

App. pp. 8-9.

[3] The trial court gave Husband additional credits totaling approximately $28,000 for personal funds spent on the parties' children's college expenses as well as for certificates of deposit brought into the marriage. Excluding the pensions divided by QDROs, Husband received $376,528.04 of the marital estate and Wife received $88,044.31. The trial court ordered Husband to make a cash

equalization payment to Wife in the amount of $144,241.86 in order that each party receive a 50% share of the total net marital estate. The trial court specified that Husband could satisfy this cash payment by liquidating certain retirement accounts, refinancing the marital home, or obtaining a loan, and that if those options were insufficient then Husband would be required to sell the marital home.

[4] On July 18, 2014, Husband filed a motion to correct errors in which he argued, among other things, that the trial court erred by failing to consider the tax consequences of drawing funds from the parties' tax deferred assets, including Husband's 401(k). The trial court denied Husband's motion.

## Discussion and Decision

[5] Husband raises two issues on appeal: (1) whether the trial court abused its discretion by failing to consider the costs of a real estate sale and tax consequences of its property disposition, and (2) whether the trial court abused its discretion by failing to order the division of Husband's 401(k) by means of a QDRO.

## Standard of Review

[6] "We apply a strict standard of review to a court's distribution of property upon dissolution. The division of marital assets is a matter within the sound discretion of the trial court." *Smith v. Smith*, 854 N.E.2d 1, 5 (Ind. Ct. App. 2006) (citations omitted). "The presumption that a dissolution court correctly

followed the law and made all the proper considerations when dividing the property is one of the strongest presumptions applicable to our consideration on appeal." *Id.*

However, because Wife neglected to file an appellee's brief, our standard of review is slightly different. Where one party fails to file an appellate brief, we may reverse the trial court if the appellant presents a case of prima facie error. *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). "Prima facie error means at first sight, on first appearance, or on the face of it." *Id.* We will not undertake the burden of developing an argument on the Wife's behalf. *Id.*

# I. Whether the Trial Court Erred by Failing to Consider the Tax Consequences of its Asset Distribution

Indiana Code Section 31-15-7-7 provides that "The court, in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party." The statute requires the trial court to consider only the direct, immediate, or inherent and necessarily incurred tax consequences of the property disposition. *Harlan v. Harlan*, 560 N.E.2d 1246 (Ind. 1990); *Granger v. Granger*, 579 N.E.2d 1319, 1321 (Ind. Ct. App. 1991). "A taxable event must occur as a direct result of the court-ordered disposition of the marital estate for the resulting tax to reduce the value of the marital estate." *Granger*, 579 N.E.2d at 1321.

[9] The inclusion of costs of the sale of real estate in a trial court's valuation of said real estate has been analogized by this court to the consideration of tax consequences under Section 31-15-7-7. *Dowden v. Allman*, 696 N.E.2d 456, 458 n.1 (Ind. Ct. App. 1998). Like tax considerations, we have held that it is only appropriate for a trial court to consider the costs of sale of real estate in its valuation when such costs will be incurred as a direct result of the trial court's disposition of property.

[10] In *Granger*, the husband filed a petition for dissolution of marriage and subsequently listed two laundromats he owned for sale. 579 N.E.2d at 1320. The trial court determined the anticipated tax liability from the sale of the two laundromats and reduced the marital estate by that amount. The trial court explained its consideration of the possible tax liabilities from the sale by stating that although it did not "specifically order the sale of the laundromats," there would be no other way "under the circumstances, where [the husband] can accomplish the things that have been required by this Court without the sale of the laundromats." *Id.* at 1321 (record citation omitted). On appeal, this court found that there was a reasonable inference that husband could borrow the necessary funds to meet his obligations under the property disposition should his income be insufficient, and therefore, the sale of both laundromats was not an immediate consequence of the property disposition. *Id.* Evidence which indicated that husband could meet his financial burden without selling the laundromats included husband's personal income, the laundromats' business income, the fact that the vast majority of husband's liabilities under the

disposition were payable in monthly installments, and that each one of the laundromats on their own was valued at an amount considerably higher than husband's total indebtness under the property division.[1] *Id.*

[11]  In the instant case, the trial court's order states as follows:

> [Husband] shall pay said cash equalization [$144,241.86] to [Wife] within seventy-five (75) days of the date of this Order such as by liquidating certain retirement accounts, refinancing the marital real estate and home, obtaining a loan, or a combination of the above. If he is unable to satisfy the cash equalization from said resources, is unable to refinance the real estate, or decides not to stay at said residence, said real estate shall be listed for sale within forty-five (45) days of this Order and sold through a licensed realtor.

App. p. 12.

[12]  The record is devoid of any evidence regarding Husband's ability to obtain a personal loan or mortgage financing. At the time of the hearing, Husband was unemployed and his total income consisted of monthly Social Security Disability payments and distributions from his pensions.[2] In contrast to *Granger*, Husband has been ordered to make a larger cash payment within a relatively short period of time and is on a fixed income. As the trial court acknowledged in its order, it seems clear that Husband will be unable to satisfy

---

[1] The trial court determined that husband would be liable for certain marital debts totaling $49,117.37, the majority of which was composed of a mortgage and business debt, and was payable monthly. The trial court also ordered husband to pay wife $6,168.23 within 180 days of the order. The laundromats were valued at $110,000 and $80,000, carrying a total indebtedness of $19,000. Husband had a personal income of $30,000 per year. *Id.*

[2] Husband's Social Security Disability benefits and pension payments (after being reduced by the QDROs) amounted to approximately $41,500 per year.

the cash payment without liquidating a portion of his retirement accounts, selling his home, or both.[3] Accordingly, we think that there will clearly be a direct, necessarily-incurred tax consequence as a result of the trial court's order. Because the retirement accounts are comprised of pre-tax funds, liquidation of those accounts will almost certainly cause Husband to incur a significant tax liability. More directly, the trial court stated in its property disposition, and in its order on Husband's motion to correct errors, that Husband must sell the marital home if he is unable to satisfy the cash equalization by other means. There would certainly be standard sale-related costs incurred by Husband if he were forced to sell the marital home, costs which the trial court neglected to consider in its order. Accordingly, we find that the trial court erred in failing to consider both the tax consequences of drawing from Husband's 401(k) assets and the real estate costs associated with the sale of the marital home.

[13]   "[T]he trial court's judgment might provide alternative plans of distribution, one which appropriately considers resulting tax consequences and one which does not involve tax consequences." *Granger*, 579 N.E.2d at 1321 n.2. On remand, the trial court shall consider the costs and/or tax consequences of its property valuation based on the options it provides Husband to meet his cash equalization, be that liquidating his tax-deferred accounts, selling the marital

---

[3] We note that the court valued the marital home at $97,000. Assuming that Husband can sell the home for that price, not including any sale costs, Husband would still be approximately $47,000 shy of the cash equalization payment. Therefore, it is unlikely that he will be able to satisfy the order without liquidating retirement accounts.

home, or otherwise, with the appropriate adjustment of the valuation of those assets contingent upon the manner in which Husband chooses to meet his equalization liability.[4]

## II. Whether the Trial Court Erred by Failing to Divide Husband's 401(k) Using a QDRO

[14] Husband argues that dividing his 401(k) via a QDRO would have been a more equitable method of distribution and that doing so would have reduced the cash equalization payment to only $31,126.18, thus eliminating the tax consequence issue by preventing the need to liquidate accounts or sell the house. We disagree for several reasons. Firstly, although a QDRO would allow the parties to split the 401(k) without creating tax consequences, there are risks and complexities inherent in their use with respect to 401(k)'s. Preparing a QDRO takes time and must comply with the employer and benefit plan's requirements. Often, the value of a 401(k) will fall before a QDRO can be implemented, resulting in difficulties satisfying the property disposition.[5] *See e.g. Ehman v.*

---

[4] Husband briefly acknowledges in his appellate brief that a trial court is not required to consider tax consequences if such consequences were not presented by the party. *Hardin v. Hardin*, 964 N.E.2d 247, 254 (Ind. Ct. App. 2012). However, he argues that the issue could not have been anticipated because neither party contemplated the liquidation of the Husband's 401(k) during trial and expected a QDRO to divide the 401(k) rather than a cash payment. First, waiver is an affirmative defense and because Wife did not file a brief, we will not develop her argument for her. Second, we agree that the tax consequence issue was not readily apparent prior to the trial court's ruling and further note that Husband appropriately raised the issue in his motion to correct errors after it became apparent. As such, we decline to find that Husband waived this argument on appeal.

[5] We note that the value of Husband's 401(k) fell from approximately $312,000 at the time Wife filed her petition for dissolution in 2008, to approximately $260,000 at the time of his retirement in 2012.

*Ehman*, 941 N.E.2d 1103 (Ind. Ct. App. 2011); *Case v. Case*, 794 N.E.2d 514 (Ind. Ct. App. 2003).

[15] Furthermore, neither party specified to the trial court by what means they wished the 401(k) to be split. Husband made no argument at trial that a QDRO would be a superior method to divide the 401(k). Finally, Husband cited no cases or statutes in support of his contention that the trial court was required to use QDRO as opposed to a cash equalization payment. In light of the significant discretion afforded a trial court in its division of property and lack of support for Husband's argument on this issue, we affirm the trial court's judgment with regards to the means by which it chose to divide the marital assets.

[16] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

May, J., and Crone, J., concur.